STATE, EX REL. MEYER-KISER BANK *v.* SUPERIOR COURT OF MARION COUNTY ET AL.

[No. 26,055. Filed July 24, 1931. Concurring opinion filed August 3, 1931.]

*Smith, Remster, Hornbrook & Smith, Noel, Hickam, Boyd & Armstrong, James M. Ogden,* Attorney-General, and *E. Burke Walker,* Deputy Attorney-General, for petitioner.

*L. Russell Newgent, Fred E. Barrett* and *William B. Miller,* for respondents.

MYERS, J.—This is an original action brought by the relator, Meyer-Kiser Bank, filed June 12, 1931, against the superior court of Marion County, Thomas D. Mc-Gee, special judge, and seven other persons named, for a writ of prohibition prohibiting the Marion Superior

Court and Thomas D. McGee, as special judge, from further acting in cause No. A61,387, wherein the seven persons are asking judgment in the aggregate of $5,560 against the Meyer-Kiser Bank and for the appointment of a receiver. A temporary writ was issued on June 17, 1931. Luther F. Symmons, as bank commissioner of Indiana, by permission of the court, became a party to this action, and, as relator, filed his cross-complaint showing, among other things, in keeping with the showing made by the relator Meyer-Kiser Bank, that this bank was incorporated under the provisions of the general banking act approved February 7, 1873, and acts amendatory thereof and supplemental thereto; that it continued in business until May 12, 1931, when, by resolution of its board of directors passed the previous day, the bank was closed "with a view to voluntary liquidation" and the banking commissioner notified of the action so taken by the bank's officials; that, since the bank was closed, the commissioner caused an examination of the bank to be made and, upon a careful check and audit, he found the total assets, as per the books of the institution, to be $3,004,033.83; total liabilities, $2,282,640.07; apparent excess of assets available to meet losses, $721,393.76; that a conservative value of the assets on liquidation is $2,382,771.97, and, with prudent management, the assets should exceed the liabilities by $100,000.

On May 23, 1931, after notice to the stockholders had been given, shareholders, in person, representing 13,537 shares, and by proxy, 25 shares, out of a total of 15,000 shares, the entire capital stock of the bank, met and, by unanimous vote, ratified and confirmed the action theretofore taken by the board of directors, and by additional resolutions, in substance, directed that the board of directors proceed to the liquidation of the bank through the medium of liquidating agents to be appointed by

the board, subject always to the further supervision, direction and control of the department of banking of the State of Indiana; that the assets of the bank be converted into cash, and, after paying expenses incident thereto, they be applied, first, to the payment in full of claims of depositors and creditors of the bank in accordance with their respective equities as established by law, and, second, the residue to be paid to the stockholders in proportion to the shares of capital stock owned by them; that no dividends or profits shall be paid to the stockholders nor shall any part of the capital stock be withdrawn by nor paid to the stockholders in any manner whatever until the debts and liabilities of the bank of every kind are fully paid. Notice of these resolutions was given by publication. Immediately following the stockholders' meeting, the banking department of Indiana approved the proposed liquidation of the bank and ordered that its assets and its business be restored to the custody of the liquidating agents, subject always to the supervision, direction and control of the department of banking of the State of Indiana.

On the same date, May 23, the board of directors, at a special meeting, convened and, by resolution, appointed three persons as liquidating agents, and, in other respects, the resolutions were practically the same as those adopted by the stockholders. The liquidating agents, after their appointment had been approved by the Commissioner of Banking, entered upon the discharge of their duties under the supervision and control of the Commissioner of Banking, and were so acting on June 4, 1931, when Leland Thorne and six others commenced cause No. A61,387 in the Marion Superior Court.

The title of the act under which the relator, Meyer-Kiser Bank, was incorporated reads as follows: "An Act to authorize and regulate the incorporation of Banks

of Discount and Deposit in the State of Indiana."
Section 11 of that act is still in force and provides that,
"Any such association may go into liquidation and be
closed, by a vote of its shareholders owning two-thirds
of its stock. And when such vote shall be taken, it shall
be recorded on the record-book of the association, and
notice thereof given by publication for at least three
successive weeks. . . . And after such vote shall be
taken, no dividend of profits or of the capital shall be
made to the stockholders, nor any part of the capital
withdrawn by nor paid to the shareholders, in any
manner whatever, until all the debts and liabilities of the
association of every kind are fully paid." Acts 1873
p. 21, §3867 Burns 1926. In connection with this sec-
tion, the Legislature, in 1915 (Acts 1915 p. 546, §3972
Burns 1926) gave the Auditor of State, now bank com-
missioner, the right to petition for a receiver of a bank,
when, in his opinion, its "affairs are not being adminis-
tered to the best interests of the depositors and stock-
holders," although the same is in voluntary liquidation.

The vote of the shareholders was had and resolutions
adopted, record made, and notice given in compliance
with §11, *supra*. Section 18 of the 1873 act provided
for an examination of such associations under direction
of the Auditor of State, but that section was amended in
1895 (Acts 1895, ch. 98, p. 202) to the effect that when
an examination disclosed an insolvent or failing condi-
tion of the bank, it was the duty of the examiner to
notify the Auditor of State, who at once was required
to put some one in charge of the affairs of the bank and
to immediately apply to the judge of the circuit or su-
perior court of the county in which the bank is located
for the appointment of a receiver. This same provision
with reference to the duty of the Auditor of State to
put some one in charge and to have a receiver appointed
was carried forward into the act of 1907 (Acts 1907,

ch. 182, p. 300, §2) which impliedly repealed the 1895 amendment of §18, *supra,* and which provision as to placing some one in charge and the appointment of a receiver was also a part of the act of 1911 (Acts 1911, ch. 17, p. 30) which superseded the act of 1907.

The act of 1911 consisted of five sections. The fourth section repealed all laws in conflict therewith and the fifth was an emergency section. The first three sections were amended in 1921 (Acts 1921, ch. 263, p. 816) whereby (§2) the bank commissioner was substituted in place of the Auditor of State, in conformity with an act of the Legislature approved March 7, 1919. (Acts 1919, ch. 50.) This section was again amended in 1929 (Acts 1929, ch. 161, p. 495, §3965 Burns Supp. 1929) in several important particulars, each of which gave the bank commissioner additional power and discretion. Owing to the length of the section amended and as amended, we deem it sufficient for this opinion to call attention to the amendments alone pertinent to this case.

Prior to the amendment of 1929, the Bank Commissioner, on notice by an examiner of the insolvent or failing condition of a bank, "shall thereupon direct the examiner or some other person appointed by him to at once take charge and control" of the affairs of the bank, "and said bank commissioner shall immediately thereafter make application to the judge of the circuit court or superior court of the county where such" bank is situated for the appointment of a receiver. But the section as amended permits the commissioner, upon such notice by the examiner, to exercise discretion, that is to say, "*if said bank commissioner shall deem it necessary and expedient,* he shall thereupon direct said examiner or some other person appointed by him to at once take charge and control of said private bank . . . and said bank commissioner shall, *if he finds it to be to the best interests of the depositors and creditors* of said bank,

make application to the judge . . . for the appointment of a receiver." (Our italics.) Furthermore, in place of the provision "Banks . . . being administered by receivers and assignees shall be subject to the same examination and be required to report to the bank commissioner as is required of solvent banks . . . and safe deposit companies," it now reads, "Banks . . . in voluntary liquidation shall be subject to the same examination and shall be required to report at the discretion of the bank commissioner the same as solvent banks . . . and safe deposit companies." There is also a provision, not at this time material, whereby the Attorney-General may be called to perform the duties of the bank commissioner.

The Legislature, in 1919, created a department of the state government, to be known as the "department of banking." All laws relating "to the incorporation, organization, supervision, control and management of all banks, of all kinds authorized by law to transact business in this state," and other kindred institutions mentioned in the act were "continued in full force and effect, excepting as modified by this Act," which took effect September 30, 1920, when "the banking department of the auditor of state" ceased to function. By that act, the power and authority of the Auditor of State, together with all books, records and other equipment connected with the business of banks, was transferred to the new department, to be "administered by a bank commissioner and such deputies, examiners, clerks and assistants as are provided for in this Act." Acts 1919 p. 112, ch. 50, §§1-4, §3967 *et seq*. Burns 1926. Section 1 of this act was amended (Acts 1921, ch. 263, p. 259), only to the extent of increasing the bank commissioner's salary from $3,000 to $5,000 a year and increasing the number of bank examiners from eight to 10.

As we have seen, in 1919, the Legislature created the "department of banking" as a separate department of government. The head of this department is the bank commissioner appointed by the Governor.

The commissioner is an administrative officer charged with certain important official duties, in their nature, of a business character. The subject of banking and similar businesses, their control and supervision, have frequently had the attention of the Legislature, with the result that it continued to affirm in more positive terms its purpose of classification of banking and kindred subjects, and to exclude all outside interference with the duties imposed upon the bank commissioner, one of which is, under certain contingencies, to apply for a receiver. Prior to the 1929 act, *supra*, the exclusive right of the bank commissioner to apply for a receiver was questioned, but since that act gives him the right to exercise a discretion, among other things to apply to the court for the appointment of a receiver, we deem the question settled that he alone has such right. The bank commissioner is supplied with all of the facilities to obtain the true financial condition and manner of conducting the institutions confided to his department, and no doubt, in the opinion of the Legislature, a qualified commissioner would be as well, if not better, equipped than the court, and at less expense, to determine the methods to be applied to such institutions, even though they might appear to be in an insolvent or failing condition. The question for decision is not whether the Marion Superior Court has jurisdiction to appoint receivers, but whether, in this class of cases, the bank commissioner has the exclusive right to make the application. This court has so held. *Farmers Deposit Bank* v. *State, ex rel.* (1929), 201 Ind. 117, 166 N. E. 285.

The magnitude of the affairs of the Meyer-Kiser Bank, called to the attention of the bank commissioner and

which affected several thousand depositors whose deposits exceeded $2,000,000, was a serious matter. "The best interests of depositors and creditors" of this bank was a question for business judgment, and business judgment, we may say, requires business discretion, which the Legislature, in this class of cases, has conferred upon the bank commissioner. Acts 1929, *supra*. The stockholders of the Meyer-Kiser Bank decided that the bank should go into voluntary liquidation. This it might lawfully do. The State Bank Commissioner was called, who took charge of the assets of the bank, and, after a thorough examination and audit of its affairs, found it to be solvent and approved voluntary liquidation through approved liquidating agents. Notwithstanding the bank commissioner released the assets of the bank to such agents, he nevertheless, under the law, retained supervisory jurisdiction over the liquidation, with authority, should he later find danger of insolvency, or that the bank's assets were being wasted or improperly used or converted, whether from excessive cost of operation or otherwise, to again take charge and control of the bank and its affairs, and subject it to the same treatment and to apply the same remedy applicable to going banks found in like financial condition (Acts 1929, *supra*) without any regard whatever for the 18-months provision in the statute. Acts 1915, *supra*.

Section 11, *supra*, authorizes state banks to go into voluntary liquidation. The Legislature, in 1915, 1919 and 1929, by enactments to which we have referred, provided for their control and supervision. True, they carry a title embracing matters regulatory and supervisory, which is not inconsistent with the word "regulate" found in the title of the 1873 act. Moreover, these enactments are germane to the subject expressed in the title of the original

act. They are the outgrowth of §18, *supra,* and of such a character to be properly incorporated into the act of which §18 was a part, and clearly responsive to its title. They do not introduce an additional subject, but are matters properly connected with the subject of banking. "The rule is that new matter which, if it had been a part of the original act would have been embraced in the subject expressed in the title, may be subsequently made a part of the act by amendment." *State* v. *Closser* (1912), 179 Ind. 230, 234, 99 N. E. 1057. The act of 1921 had for its object the alteration and improvement of the act of 1873, which purpose was extended by the amendment of 1929. The acts of 1915 and 1919 clearly supplement the original act by the addition of things which time and experience have proved were necessary to complete, and extend that which was already in existence, namely, organization, control and supervision of banks. *McCleary* v. *Babcock* (1907), 169 Ind. 228, 82 N. E. 453.

The claim that these latter enactments violate Art. 4, §19, of the Indiana Constitution, in that they introduce matters not properly connected with the title of the original act, cannot be sustained. In *Board, etc.,* v. *Scanlan* (1912), 178 Ind. 142, 147, 98 N. E. 801, it is said: "The word 'subject' in the Constitution (article 4, §19) indicates the thing about which the legislation is had, and the word 'matters' the incident or secondary things necessary to provide for its complete enforcement." The laws enacted since the act of 1873, *supra,* pertaining to state banks, other than private and partnership banks, and now in force in this state, are either amendatory or supplementary to that act, and they furnish the rules and procedure and are sufficiently comprehensive to include every phase essential to the complete administration by the Bank Commissioner of the department of which he is the head.

It is here made to appear that the Marion Superior Court, over the objection of the Bank Commissioner, has assumed jurisdiction to appoint a receiver for the Meyer-Kiser bank upon the application of a creditor. It seems to us the Legislature has reserved to itself, through its administrative officer, the Bank Commissioner, the right to determine when and who may make such application. Hence, until the courts are requested to function by proper legislative authority, the subject-matter involved would be under legislative administration and control and clearly without judicial interference.

In this state, this court not only determines its own jurisdiction, but it "also has the power and authority, ultimately and conclusively, to determine under the law, the jurisdiction of all other judicial tribunals within the State. By its decisions it determines what is the law of the land within its territorial jurisdiction, and all courts within the State, as well as all persons therein, are controlled by its decisions relative to what is the law, and should yield obedience thereto. Elliott, App. Proc., §25." *Pittsburgh, etc., R. Co.* v. *Peck* (1909), 172 Ind. 562, 577, 88 N. E. 939.

Applying the principle announced in the case last cited, and the question of jurisdiction properly before us, our ruling in *Farmers Deposit Bank* v. *State, ex rel., supra,* should be respected by all trial courts of the state until changed or modified by this court.

No one is insisting that the Bank Commissioner has not discharged his full duty, but, on the contrary, it affirmatively appears that his action in approving the voluntary liquidation of the Meyer-Kiser bank was the result of careful investigation of all the circumstances that would enable him to exercise a sound business judgment in the interest of all parties con-

cerned. Furthermore, it appears that there is no other remedy as adequate for the protection of all the parties in interest as the one sought in the instant case. A writ of prohibition, in its prerogative character, is not unlike the writ of mandamus. Although tested by a well-recognized rule, it issues in the sound legal discretion of the court, having in mind what is necessary and proper to be done in the particular instance for the attainment of justice. *State, ex rel.,* v. *Board, etc.* (1903), 162 Ind. 580, 68 N. E. 295, 70 N. E. 373; *State, ex rel.,* v. *Foland, Auditor* (1921), 191 Ind. 342, 132 N. E. 674; *State, ex rel.,* v. *DeBaun, Judge* (1926), 198 Ind. 661, 154 N. E. 492. Were we not to take into consideration the effect of remedies possibly open to petitioners, and our former decision of the precise question submitted to the Marion Superior Court, presided over by Thomas D. McGee, as special judge, we might hesitate to issue the extraordinary writ of prohibition. But, in keeping with our ruling in *Farmers' Deposit Bank* v. *State, ex rel., supra,* to which we still adhere, that the Bank Commissioner alone has been selected by the Legislature to apply to the courts for the appointment of a receiver for a state bank, and our conclusion that petitioners have no other remedy as full and complete as the one here demanded, it follows that a permanent writ should issue. In conclusion, we hold that the Marion Superior Court did not acquire jurisdiction to appoint a receiver in cause No. A61,387, for the reason that such applications must be made by the Bank Commissioner who is, by law, made the statutory plaintiff in all cases for the appointment of a receiver for the institutions over which the Legislature has given him exclusive control. *Lowery* v. *State Life Ins. Co.* (1899), 153 Ind. 100, 54 N. E. 442.

It is, therefore, ordered that the temporary writ heretofore issued, prohibiting the Marion Superior Court and Thomas D. McGee as special judge thereof from further

acting in cause No. A61,387, be and the same is now made permanent.

Travis, J., concurs.

Treanor, J., concurs with opinion.

Martin, C. J., dissents with opinion.

Roll, J., dissents with opinion.

### CONCURRING OPINION.

TREANOR, J.—I concur for the following additional reasons: In construing a series of statutes courts should seek to give effect to a clearly expressed general purpose of the General Assembly even though verbal gaps occur and even occasional expressions which, taken alone, are inconsistent with the general purpose or end. Special significance should be attached to provisions which would be rendered meaningless and unintelligible unless the statutes are construed to give full effect to the general purpose. The majority opinion points out "that the subject of banking and similar businesses, their control and supervision, has frequently had the attention of the Legislature, with the result that it continued to affirm in more positive terms its purpose of classification of banking and kindred subjects, and to exclude *all outside interference with the duties imposed upon the bank commissioner, one of which* is, under certain contingencies, to apply for a receiver." (Our italics.) The writer of the majority opinion, speaking for this court in *Farmers Deposit Bank* v. *State, ex rel.* (1929), 201 Ind. 117, 166 N. E. 285, effectively interpreted the general purpose of our General Assembly in respect to administration of failing or insolvent banks: "The various provisions of our statute on the subject of banking in its various forms in this state evince a legislative policy of administration and supervision peculiar to that class of business and not to release the assets of a member of that class for

sequestration even to a receiver, until certain circumstances named in the statute are affirmatively declared in a judicial proceeding begun and prosecuted to a final determination by the Banking Commissioner, whose authority in that regard is exclusive. *Ryan* v. *Ray* (1886), 105 Ind. 101, 4 N. E. 414.''

There has been a definite legislative policy of increasing the control of the Bank Commissioner over banking institutions, and especially when such institutions are in an insolvent or failing condition. This policy rests upon the conviction that expert, disinterested control and supervision is necessary to protect the interests of depositors and other creditors. Obviously the time when this disinterested, expert control and supervision is most needed is when a banking institution is in a failing or insolvent condition, and it is inconsistent with and subversive of the general purpose of the General Assembly to allow a creditor to take from the bank commissioner all supervision and control by securing the appointment of a receiver. Of course courts must give effect to the clearly expressed intention of the General Assembly, but where there is no clearly expressed intent, we should construe the statute as authorizing, rather than denying, a method which promotes the general legislative purpose, if such construction is reasonable. The following portion of the statute seems quite definite: "And if said bank commissioner shall deem it necessary and expedient he shall thereupon direct said examiner or some other person appointed by him to at once take charge and control of said private bank, bank of discount and deposit, savings bank, loan and trust and safe deposit company, and all the books, notes, cash on hand and other assets, and said bank commissioner shall, if he finds it to be to the best interests of the depositors and creditors of said bank, make application . . . for the appointment of a receiver to take charge of said

private bank, bank of discount and deposit, savings bank, loan and trust and safe deposit company." §3965 Burns Supp. 1929, Acts 1929 p. 495. We think the reasonable construction of the excerpt just quoted, keeping in mind the general purpose and intent of the General Assembly as revealed in the series of statutes, is that the Bank Commissioner has the exclusive privilege of applying for a receiver for a banking institution which is in a failing or insolvent condition, except as hereinafter pointed out; and that he may, as he did in this case, retain control and supervision through a liquidating committee until in his discretion the situation requires the appointment of a receiver. The following provision is also found in §3965, *supra:* "If the bank commissioner fails, neglects or refuses for fifteen days to discharge any duty imposed upon him by the provisions of this act, depositors and creditors representing twenty-five per cent of the total deposits and obligations, except stock liability, shall have the right to petition the attorney-general, who shall thereupon perform the duties of the bank commissioner in the particular case and apply for a receiver." This provision seems to throw considerable light on the legislative intent as respects the privilege of a creditor to apply for a receiver under the general law of receiverships. It enables a group of depositors and creditors representing 25 per cent of the total deposits and obligations to compel the Attorney-General to perform the duties of the bank commissioner and apply for a receiver whenever the bank commissioner "fails, neglects or refuses for fifteen days" to perform any duty imposed upon him by the provisions of §3965, *supra.* It will be noticed that the provision quoted limits the power of the Attorney-General in respect to applications for a receiver. The statute requires the Bank Commissioner to apply for the appointment of a receiver "if he finds it to be to the best interests of the depositors and

creditors," etc.; while the Attorney-General is required to "perform the duties of the bank commissioner in the particular case and apply for a receiver." Clearly the legislative intent is to allow the Bank Commissioner to exercise his discretion in the matter of applying for a receiver and to withhold from the Attorney-General the exercise of any discretion in the matter; thus indicating an intent to leave the control of an insolvent or failing bank indefinitely in the hands of the Bank Commissioner. Further, there would seem to be no rational explanation for requiring a large group of creditors to petition the Attorney-General to take certain action which would immediately result in the appointment of a receiver if the Legislature intended and understood that an individual creditor could apply for a receiver. We assume that the appointing of a receiver brings the winding up of the bank's affairs under the general receivership law and takes all control from the Bank Commissioner as well as from the Attorney-General, in case the latter should be the one applying for the receiver. Consequently, the requirement that depositors and creditors representing 25 per cent of the total deposits and obligations must petition the Attorney-General to take charge in order to obtain a receiver is useless except on the assumption that individual creditors no longer have the privilege of applying for a receiver in the case of banks in a failing or insolvent condition. For the foregoing reasons I conclude that the Legislature has taken from the courts jurisdiction to appoint receivers for banks unless and until a receivership is applied for in accordance with the provisions of the statute.

When the Legislature makes jurisdiction of a court depend upon certain conditions precedent the court cannot acquire jurisdiction until such statutory conditions have been satisfied. If deciding whether the conditions precedent have been satisfied involves the determination

of a question of fact, then the trial court should be free to determine the existence or nonexistence of the jurisdictional fact without interference by this court by a writ of prohibition. But when a party comes to this court and shows that he is being subjected to a suit before a trial court which has no power, as a matter of law, to adjudicate the questions involved in the suit, the record disclosing that any action by the trial court on the merits will be a nullity and binding on no one, the writer believes a writ of prohibition should issue, without requiring any showing of irreparable injury other than that involved in being forced to submit to a useless legal proceeding. Such a result is legally sound and certainly accords with common sense and fairness to litigants, and is supported by much respectable judicial authority, as shown by the following excerpts from judicial opinions: "It is insisted, however, that the petitioner has other remedies, i. e., by appeal, and that therefore the writ should not issue. This argument is not well taken. . . . No good purpose could be served in permitting a disqualified judge to perform certain acts and thereafter declare them void on the ground that he had no jurisdiction to perform the same." *Hall* v. *Superior Court of Imperial County* (1925), 198 Cal. 373, 245 Pac. 814.

"Respondents also urge that because the plaintiff has the right of appeal from any judgment which may be rendered against him in the action . . . he is not entitled to a writ of prohibition in the premises. Although, strictly speaking, such position may be correct, since the identical question which would be presented on appeal has been fully presented to and considered by this court in this proceeding, in the interests of efficiency and the saving of expense and inconvenience to the litigants, it may as well be answered in this proceeding as later on appeal." *Knox* v. *Superior Court of Riverside County* (1929), 100 Cal. App. 452, 280 Pac. 375.

"It is contended that there is a plain, speedy and adequate remedy by appeal, and for that reason the writ in any event should not issue. But the law appears to be that, where the court is proceeding with a case without first having acquired jurisdiction, it presents a proper case for the invocation of the writ of prohibition." *State, ex rel.,* v. *Superior Court of Chelan County* (1913), 76 Wash. 27, 135 Pac. 494.

"It is urged that the remedy by appeal from an adverse final judgment is available to the relator, and that the writ of prohibition should be denied for that reason. . . . The existence of a remedy by appeal does not necessarily defeat the right to relief by prohibition. . . . An application of this character is addressed to the sound discretion of this court . . . and whenever it is made to appear, as in this instance, that under no conceivable circumstances can the district court render a valid judgment because of a lack of jurisdiction, the discretion should be exercised in favor of issuing the writ, to the end that litigants may be saved the needless trouble and expense of prosecuting their litigation to a fruitless judgment." *State, ex rel.,* v. *District Court* (1915), 51 Mont. 503, 154 Pac. 200, L. R. A. 1916E 1079.

"Another reason advanced why the writ should not go is that the petitioner had the right of appeal to this court from an adverse judgment in the circuit court, and, therefore, had an adequate remedy through the ordinary channels of the law without resorting to the extraordinary writ sought to be here obtained. . . . But we know of no instance in which the writ has been denied when it appeared that the circuit court was proceeding without authority and the parties had not waived their right to raise the question." *Fitzpatrick* v. *Young* (1914), 160 Ky. 5, 169 S. W. 530.

"If we are right, the order was wrong and deprived the plaintiff of her right to a trial by jury. It is an order

that should be dealt with now, before the plaintiff is put to the difficulties and the Courts to the inconvenience that would be raised by a severance that ultimately must be held to have been required under a mistake. It does not matter very much in what form an extraordinary remedy is afforded in this case. But as the order may be regarded as having repudiated jurisdiction of the first count, mandamus may be adopted to require the District Court to produce and to give the plaintiff her right to a trial at common law." *Ex parte Simons* (1918), 247 U. S. 231, 38 Sup. Ct. 497, 62 L. Ed. 1094.

"The want of authority in the District Court to entertain these proceedings *in personam* under Rule 59 (now 56) brought by the claimants against Mr. Walsh as Superintendent of Public Works of the State of New York is so clear, and the fact that the proceedings are in essence suits against the State without its consent is so evident, that instead of permitting them to run their slow course to final decree, with inevitably futile result, the writ of prohibition should be issued as prayed." *Ex parte State of New York* (1921), 256 U. S. 490, 41 Sup. Ct. 588, 65 L. Ed. 1057.

Having concluded that the Marion Superior Court is without jurisdiction to hear and determine the questions presented by the application for a receiver, I believe the alternative writ of prohibition should be made absolute. The General Assembly of Indiana has specifically enacted that "writs of prohibition may issue out of the Supreme Court to such circuit, superior and criminal courts respectively to restrain and confine such circuit, superior and criminal courts respectively to their respective lawful jurisdiction." §1244 Burns 1926, Acts 1915 p. 207. What this court may do it owes a duty to do when justice requires it to act.

## Dissenting Opinion.

MARTIN, C. J.—The action here sought to be prohibited was brought against the Meyer-Kiser (state) Bank by creditors who seek to recover $6,000, and to have a receiver appointed for the bank. They allege that the bank is insolvent; that it has $2,000,000 in deposits due creditors; that its assets are frozen and incapable of conversion into cash; that it is illegally conducting an insurance, real estate and safe deposit business to the loss of creditors; that the State Bank Commissioner has failed and refused to act except to release the assets to a liquidating committee of the bank's officers; that these liquidators are attempting to prefer claims without right, are creating excessive expenses and occupying large and unnecessary office space; that suits are being threatened by depositors; that expense of litigation will be incurred, and waste committed; that creditors in the sum of $50,000 are claiming preference over others and a general controversy exists as to the rights of the parties; that titles to real estate sold cannot be given without dispute as to their validity; and that an emergency exists for the appointment of a receiver to protect the property.

It is apparent that the action in the superior court of Marion County was brought under §245, ch. 38, Acts 1881, §1300 Burns 1926, which reads in part as follows:

"A receiver may be appointed . . . in the following cases: . . . Third. In all actions when . . . the property (or) fund . . . in controversy is in danger of being lost, removed or materially injured. . . . Fifth. When a corporation has been dissolved, or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights. . . . Seventh. . . . where, in the discretion of the court . . . it may be necessary to secure ample justice to the parties."

In applying for a writ of prohibition (under §1244 Burns 1926) to restrain Thomas D. McGee, as special judge of the Marion Superior Court, from exercising any jurisdiction in such action, the relator herein contends that the procedure outlined in ch. 161, Acts 1929, §3965 Burns Supp. 1929, for the appointment of a receiver for insolvent or failing banking corporations is exclusive and that the lower court has no jurisdiction to hear or consider any application for the appointment of a receiver for a state bank except one made in pursuance to such act of 1929, by the banking commissioner of the state (or under certain conditions by the Attorney-General).

Chapter 161, Acts 1929 p. 495 (which amends §2, ch. 263, Acts 1921 p. 816, which amends §§1, 2 and 3, ch. 17, Acts 1911 p. 30, which repealed ch. 182, Acts 1907 p. 300), provides for the examination of banks by bank commissioners, and if such bank "be in an insolvent or failing condition, or if the assets thereof are being wasted or improperly used or converted, said examiner shall at once notify the bank commissioner; and if said bank commissioner shall deem it necessary and expedient he shall thereupon direct said examiner or some other person appointed by him to at once take charge and control of said . . . bank . . . and said bank commissioner shall, if he finds it to the best interests of the depositors and creditors of said bank, make application to the judge of the circuit court or superior court of the county where such . . . bank . . . is situated . . . for the appointment of a receiver," etc.[1]

Much can be said in support of a legislative policy to

---

[1] The title of this act, and of the acts which it amends, contains nothing upon the subject of the appointment of receivers for banks, but concerns "the appointment and fixing the powers of examiners for and regulating the examination of . . . banks," etc. The title of the original act of February 7, 1873 is "An act to authorize and regulate the *incorporation* of Banks of Discount and Deposit in the State of Indiana."

place exclusively in the hands of the banking department (created by ch. 50, Acts 1919, p. 112, as amended by ch. 105, Acts 1921 p. 259) the right to apply for receivers for insolvent and failing banks. In the present state of our banking law and our antiquated liquidation statute (§11, ch. 8, Acts 1873 p. 21, §3867 Burns 1926) something can also be said in favor of retaining the general law of receivers as applicable to banking as well as other corporations. The courts, however, are not concerned with legislative problems. The question to be decided is: Did the Legislature limit applications for receivers for banks to those filed by the banking commissioner? We are impressed by the fact that if the Legislature had intended to prevent the general statute (§1300, *supra*) from applying to banking corporations, it could easily have done so by an express provision to that effect.

In *Wehmeier* v. *Mercantile Banking Co.* (1911), 49 Ind. App. 454, 97 N. E. 558, it was held that §8, ch. 113, Acts 1907 (the language of which has largely been carried forward in the amendments of 1911, 1921 and 1929), which provided for the examination of banks and if the bank be insolvent or in a failing condition the Auditor (now banking commissioner) shall make application for a receiver, merely extended to such officer a right theretofore available only to others. The court stated the principle of law that where a right of action is created by statute, or an existing right is changed thereby and a remedy is provided for its enforcement, the statutory remedy is exclusive; but held that §8 giving to the Auditor (now banking commissioner) the right to apply for a receiver for an insolvent bank and providing that such bank shall not be subject to any other "visitorial powers . . . except such as are vested in the several courts of this state" (which quoted language is carried forward in the present law), indicates an intention not to interfere with the existing authority of the courts

to appoint receivers for such banks. In that case, p. 462, the case of *Ryan* v. *Ray* (1886), 105 Ind. 101, 4 N. E. 214, was distinguished on the ground that in the act there considered a new right was created and a specific mode of relief provided. I believe this court in *Farmers Deposit Bank* v. *State, ex rel.* (1929), 201 Ind. 117, 166 N. E. 285, misinterpreted the holding in *Ryan* v. *Ray, supra*, and that the dicta there stated (bottom of p. 120 and top of p. 121) is unwarranted. An examination of *Hawley* v. *Huntington County State Bank* (1929), 201 Ind. 390, 165 N. E. 546, indicates that the courts have continued to hear applications by creditors for the appointment of receivers of state banks on the ground of insolvency.

The amendment of 1911, although not involved in *Wehmeier* v. *Mercantile Banking Co., supra*, was passed before that case was decided. The amendments of 1921 and 1929, passed after the Appellate Court had construed the meaning of the language used in the act of 1907, continued the use of that language which had been held not to limit applications for a receiver for a bank solely to those filed by the auditor (bank examiner). In my opinion the Legislature has not limited applications for the appointment of receivers of insolvent and failing banks solely to those filed by the banking commissioner. A conclusion that §1300, *supra*, has been repealed or amended so far as it applies to banking corporations can only be reached, I believe, by a process of judicial legislation, which is not permitted by the Constitution.

This court, in a proceeding for a writ of prohibition, cannot upon the pleadings and without proof determine the fact of whether the bank is solvent or insolvent or try any issue of fact between the parties to the action in the Marion Superior Court. If the allegations contained in the complaint filed therein should be found by that court to be true, a receiver doubtless would be

appointed. If upon trial the facts should be established which relator contends exist, the appointment of a receiver doubtless would be refused.

A simple, adequate and effective remedy exists in the trial court which has jurisdiction to try the cause there pending, and it follows that the temporary writ of prohibition should be dissolved.

### DISSENTING OPINION.

ROLL, J.—A sufficient statement of the allegations made in the petition for a writ of prohibition is given in the prevailing opinion, and an adequate statement of the allegations made in the action sought to be prohibited is made in the dissenting opinion of Martin, C. J.

The authority of this court to issue such a writ is circumscribed by §1244 Burns 1926, Acts 1881 p. 240, and provides as follows. "Writs of prohibition may issue out of the Supreme Court to such circuit, superior and criminal courts respectively *to restrain* and confine such circuit, superior and criminal courts respectively to their respective lawful jurisdiction." (Our italics.)

The Legislature saw fit to limit the power of the Supreme Court to issue the extraordinary writ of prohibition to the one cause named in the statute, and on seeking to have the court exercise such extraordinary power must bring itself clearly within the terms of the statute. *Town of Windfall City* v. *State, ex rel.* (1909), 172 Ind. 302, 88 N. E. 505.

The important question therefore is presented: Is this proceeding brought for the purpose of *restraining* and *confining* the superior court of Marion County to its lawful jurisdiction? I do not think it is. The Marion Superior Court was established by the act of the Legislature in 1879. See Acts 1879 p. 120, §1522 Burns 1926. By §1536 Burns 1926, the jurisdiction thereof is set out.

By this statute the superior court of Marion County is given concurrent jurisdiction with the circuit court, except in certain cases, not here material. The jurisdiction of circuit courts is defined by §1376 Burns 1926. Section 1300 Burns 1926 provides: "A receiver may be appointed by the court, or the judge thereof in vacation, in the following cases: . . . Third. In all actions when it is shown that the property, fund, or rents and profits in controversy is in danger of being lost, removed or materially injured. . . . Fifth. When a corporation has been dissolved, or is in imminent danger of insolvency, or has forfeited its corporate rights. . . . Seventh. And in such other cases as may be provided by law; or where, in the discretion of the court, or the judge thereof in vacation, it may be necessary to secure ample justice to the parties."

There can be no question but that respondents under the allegations of their complaint, if supported by sufficient evidence, are entitled to the appointment of a receiver, unless their right to apply for a receiver has been taken away from them by §3965 Burns Supp. 1929, Acts 1929 p. 495. We have mentioned the above provisions of this statute for the purpose of showing that the superior court of Marion County has jurisdiction of the general subject-matter of appointing receivers. It is not controverted, however, that the superior court of Marion County does not have jurisdiction over the general subject-matter of the appointment of receivers. If the bank commissioner of Indiana should conclude under the authority of the act of 1929 above cited that a receiver should be appointed for the relator herein, he would make his application to the superior or circuit court of Marion County, in the very court where this application for a receiver is now pending. It has been decided many times by this court that jurisdiction of the subject-matter is the power to hear and determine cases

of the general class to which the proceedings then before the court belong. *Daniels, Admx.,* v. *Bruce* (1911), 176 Ind. 151, 95 N. E. 569; 11 Cyc. 669; 17 Am. & Eng. Ency. Law (2d ed.) 1060; *State, ex rel.,* v. *Wolever* (1891), 127 Ind. 306, 26 N. E. 762; *Chicago, etc., R. Co.* v. *Sutton* (1892), 130 Ind. 405, 30 N. E. 291; *Jones* v. *Cullen* (1895), 142 Ind. 335, 40 N. E. 124; *Gold* v. *Pittsburgh, etc., R. Co.* (1899), 153 Ind. 232, 53 N. E. 285; *Yates* v. *Lansing* (1810), 5 Johns. (N. Y.) 282; *Jackson* v. *Smith* (1889), 120 Ind. 520, 522, 22 N. E. 431; *McCoy* v. *Able* (1891), 131 Ind. 417, 420, 30 N. E. 528, 31 N. E. 453.

Inasmuch as the superior court of Marion County has jurisdiction over the general subject-matter of appointing receivers, it has jurisdiction over the subject-matter in the instant case. (See cases above cited.) If the court has jurisdiction over the subject-matter here in controversy and has acquired jurisdiction over the parties, then its judgment would not be void, and if not void there can be no collateral attack on the proceeding or judgment. If there is no jurisdiction over the subject-matter, the judgment would be void and subject to collateral attack. *Turner* v. *Conkey* (1892), 132 Ind. 250, 31 N. E. 777, 17 L. R. A. 509, 32 Am. St. 251; *Gold* v. *Pittsburgh, etc., R. Co., supra; Todd* v. *Crail* (1906), 167 Ind. 55, 77 N. E. 402; *McLeod* v. *Receveur* (1896), 71 Fed. 455, 458.

There is no dispute here, but that the superior court of Marion County has obtained jurisdiction over the relator herein. The real question in this case, therefore, is not whether the court of Marion County has jurisdiction of the subject-matter of the action, but rather, whether the jurisdiction of the superior court of Marion County has been invoked by the proper party. My understanding is that relator contends that a creditor has no authority, under §3965 Burns Supp. 1929, to bring an action for the appointment of a receiver of a bank in voluntary liquidation. But that the exclusive

right is given by said statute to the Bank Commissioner, and that he is the only one who can invoke the jurisdiction of the Marion Superior Court in this case.

If this is the correct analysis of the question presented, relator is not entitled to a writ of prohibition. In the case of *State, ex rel.,* v. *Gleason* (1918), 187 Ind. 297, 119 N. E. 9, this language was used: "If a court has jurisdiction of the subject-matter of an action and has acquired jurisdiction of the parties, it has power to determine whether or not its jurisdiction is properly invoked in a proceeding before it. An erroneous decision of such question does not render its subsequent proceedings therein void as being without jurisdiction. An order, decree or judgment based on such proceedings might be reversed as erroneous, but it could not be collaterally attacked as void. . . . In such case the remedy is by appeal."

It is apparent, therefore, that the object of the petition herein for a writ of prohibition is not to restrain the Marion Superior Court to its respective jurisdiction, but for the purpose of having this court determine whether the jurisdiction of the Marion Superior Court has been invoked by a proper party; whether or not the right conferred upon the Bank Commissioner of Indiana, by §3965 Burns Supp. 1929, is exclusive. As the Legislature has not seen fit to authorize the Supreme Court to issue writs of prohibition for that purpose, it is my opinion that relator has not brought itself within the provisions of the law authorizing the Supreme Court to issue such a writ. Should the superior court of Marion County erroneously decide the question as to whether its jurisdiction has been properly invoked (and we have no right to assume that it will, but on the contrary we assume that it will decide correctly), the Legislature has provided for an appeal by the party aggrieved by whatever action the court may take.

Section 1302 Burns 1926 provides: "In all cases hereafter commenced or now pending in any of the courts of this state, in which a receiver may be appointed or refused, the party aggrieved may, within ten days thereafter, appeal from the decision of the court to the Supreme Court, without awaiting the final determination of such case," etc.

The legitimate scope of a writ of prohibition is to keep inferior courts within the limits of the jurisdiction conferred on them by law; to prevent them from encroaching on the jurisdiction of other tribunals. *Board, etc.*, v. *Spitler* (1859), 13 Ind. 235; *State, ex rel.*, v. *Gleason, supra.*

The power to issue the writ should not be used to take the place of appellate jurisdiction or where another remedy exists. *State, ex rel.*, v. *Superior Court* (1897), 17 Wash. 12, 48 Pac. 741, 61 Am. St. 893; *Wolcott* v. *Wells* (1890), 21 Nev. 47, 24 Pac. 367, 9 L. R. A. 59, 37 Am. St. 478. Neither is this court authorized to issue a writ because it might be afraid the lower court will erroneously decide the question presented to it. Applying the principles here set out, the jurisdiction of the Marion Superior Court being established, prohibition will not be employed to prevent an erroneous exercise of jurisdiction.

Having concluded that this court should not issue the writ of prohibition asked by relator, upon the facts of this case, for the reasons already stated the question as to whether the Bank Commissioner of Indiana has been given the exclusive right to invoke the jurisdiction of the Marion Superior Court, cannot be presented in this action, but is a proper question to be presented on an appeal.

It follows that the temporary writ of prohibition should be dissolved.