STATE EX REL. JAMES, STATE AUDITOR, *v.* MARION SUPERIOR COURT ET AL.

[Nos. 27,896, 27,897. Filed December 20, 1943.]

*James A. Emmert,* Attorney General, *Frank Hamilton,* First Assistant Attorney General, *Joseph W. Hutchinson* and *Cleon H. Foust,* Deputy Attorneys General, for relators.

*David M. Lewis, Edwin McClure,* and *Schortemeier, Eby & Wood,* all of Indianapolis, and *Chester R. Montgomery* and *Walter R. Arnord,* both of South Bend, for respondents.

SHAKE, J.—Two original actions for writs of prohibition will be disposed of by this opinion. The facts are involved but are not in dispute.

The Fidelity Investment and Loan Association, the name of which was subsequently changed to Fidelity Investment Association and later to Fidelity Assurance Association, was incorporated under the laws of West Virginia in 1911. In 1925 said corporation was admitted to do business in Indiana pursuant to the Foreign Investment Corporations Act of 1901. Acts 1901, ch. 215, p. 487; § 25-3801 et seq., Burns' 1933, § 8173 et seq., Baldwin's 1934. Said corporation continued in business in this State until April 17, 1941, when the Auditor of State canceled its license on account of litigation in West Virginia which resulted in receivership.

By § 3 of the aforesaid Act of 1901 any foreign investment corporation authorized to do business in this State was required to deposit and keep on deposit with the Auditor of State approved securities equal in value

to the amount of its liabilities to citizens of this State. Section 4 of said act provided that if any such corporation should become insolvent the Auditor should ask the proper court to appoint a receiver to take charge of such deposit for the benefit of its creditors in this State. The Foreign Investment Corporations Act of 1901 was repealed by Acts of 1935, ch. 179, § 18, but § 19 of said last mentioned act provided that no vested right, which had accrued under the former law, should be impaired by such repeal.

Between 1925 when the Fidelity corporation was admitted to Indiana, and April 1, 1935, when the repealing act passed that year became effective, said corporation sold a large number of its investment certificates to citizens of this State and deposited with the Auditor securities of the par value of $150,000 for the protection of such certificate holders, pursuant to the provisions of the Act of 1901. Meanwhile, said corporation, the Auditor of State and the Fletcher American National Bank of Indianapolis entered into a contract whereby the latter accepted custody of said deposited securities, and the same are now in the possession of its successor, American National Bank.

The General Assembly of 1937 repealed the aforesaid Act of 1935, with a proviso saving vested rights, and enacted the present Indiana Securities Law. Acts 1937, ch. 120, p. 656; § 25-851, Burns' 1933 (Supp.); § 14862, Baldwin's Supp. 1937. From the time of the repeal of the Act of 1901, until the enactment of the Securities Law of 1937, there was no statute in this State requiring foreign investment corporations to make current deposits of securities for the protection of Indiana citizens; but on April 19, 1939, the Fidelity corporation deposited with the Auditor of State $12,000

in securities for the protection of holders of certificates acquired subsequent to March 31, 1939, and pursuant to the terms of the Act of 1937. These securities are on deposit with the Indiana National Bank of Indianapolis, Indiana, for safe keeping, in the name of the Auditor of State.

It will be noted that there are three groups of Indiana citizens holding certificates of the Fidelity corporation, namely, the 1925-1935 group, protected by the Act of 1901, the 1935-1937 group for whom there was no specific statutory protection, and the 1937-1941 group, protected by the Act of 1937. All of said certificate holders, including the members of the 1935-1937 group, are general creditors of the corporation, however, and are entitled to participate in its assets in this State or elsewhere, which are not required to discharge specific pledges.

With this factual background, we come to a consideration of the litigation that brought about a resort to the original jurisdiction of this court. The first suit was instituted in the Superior Court of Marion County, Room 4, by Joseph E. Kernel on May 1, 1941. Said corporation, American National Bank of Indianapolis, as trustee, and Richard T. James, as Auditor of State, were named as defendants. The plaintiff alleged in his complaint that he was a member of the 1935-1937 group of certificate holders of the Fidelity corporation. There was a prayer for an accounting and for the appointment of an ancillary receiver without notice to administer the Indiana assets of said corporation, which appointment was made on the day the complaint was filed. Subsequently, the defendant James, as Auditor, demurred to said complaint and assigned in his memorandum thereto that he was vested with the exclusive right to maintain such a proceeding under the terms of

§ 4 of Chapter 215 of the Acts of 1901, § 25-3804, Burns'
1933, § 8176, Baldwin's 1934. This demurrer was over-
ruled but there was no interlocutory appeal from that
decision.

The second suit was instituted on May 2, 1941, when
Richard T. James, as Auditor of State, filed a petition
in the Madison Circuit Court for the appointment of
a like receiver for the Fidelity corporation, naming it as
sole defendant. On the same day said Auditor was ap-
pointed such receiver without notice. By two other
proceedings a declaratory judgment as to the rights of
the parties was sought, and it was asserted that the
only tribunal having jurisdiction of the subject-matter
of this litigation is the Probate Court of Marion County.

In Cause No. 27896, pending before us, the relator
seeks, as an individual, to prohibit the Superior Court
of Marion County, Room 4, from proceeding further
in the liquidation of the assets of the Fidelity corpora-
tion and for an order directing said court to vacate its
appointment of a receiver for said corporation. Cause
No. 27897 is brought by the same relator in his official
capacity as Auditor of State and seeks the same relief.
The reason advanced by the relators as to why the Su-
perior Court of Marion County does not have jurisdic-
tion is the same in both cases. It is that the Auditor
of State is the only person authorized by the Act of
1901 to institute and maintain an action for a receiver
of the pledged assets of the Fidelity corporation, and
that the jurisdiction of the Superior Court of Marion
County was not invoked by that officer.

Neither the repealing Act of 1935 or the Securities
Law of 1937 broadened the powers or duties of the
Auditor in regard to funds deposited with that officer
under the Act of 1901, and if said Auditor possesses
any exclusive right to maintain a receivership proceed-

ing in a situation of this character it must arise out of the express or implied terms of Sections 3 and 4 of the Act of 1901.

Section 3 of the Foreign Investment Corporations Act of 1901 provided:

"Every such corporation, association or society, before the auditor of state shall issue his authority to do business, shall deposit with said auditor of state stocks or bonds, approved by said auditor, in a sum not less than twenty-five thousand dollars ($25,000), which amount shall remain in possession of said auditor for and during the first year that said corporation, association or society shall do business. At end of said first year, said corporation, association or society shall deposit with said auditor of state stocks or bonds approved by said auditor equal to the amount of its liabilities to citizens of this state and shall keep such deposit at all times equal to such liabilities."

Section 4 of said act was as follows:

"Any time such corporation, association or society shall fail to make such deposit, as required by section three, or shall become insolvent or fail to carry out its contracts or agreements with citizens of this state, then said auditor of state shall revoke its authority to do business in said state, and shall ask the proper court of this state to appoint a receiver to take charge of such deposit for the benefit of its creditors in said state."

The last clause of said Section 4 of the Act of 1901 disputes the proposition that it was the legislative intent that the Auditor should administer the liquidation of such funds as are here involved, for it directed that when necessity therefor should arise, the Auditor "shall ask the proper court of this state to appoint a receiver."

Clearly, there is no express direction in the statute that only the Auditor may bring a receivership proceed-

ing thereunder; and if such a limitation is to be read into the Act this must be done as a matter of necessary implication. Ordinarily, anyone who has a provable right or interest in certain property or a fund may ask for receivership in a proper case (45 Am. Jur., Receivers, § 8); and that rule must be held applicable here unless there is something in the nature of the subject-matter to force a different conclusion. We find no such compelling circumstances.

The cases relied upon by the relators may be readily distinguished. *Ryan* v. *Ray* (1885), 105 Ind. 101, 4 N. E. 214, presented a situation wherein the depositors of a savings bank sought to maintain an action against its officers for misconduct and violation of their duties, *after* a receiver had been appointed for the bank and while he was acting. It was properly held that the receivership afforded the depositors an adequate and efficient remedy.

In *Huntington County Loan and Savings Association* v. *Fulk* (1902), 158 Ind. 113, 63 N. E. 123, a shareholder of a savings and loan association sought and obtained an interlocutory order appointing a receiver for the association on the grounds of insolvency and mismanagement, in the face of a statute which provided that:

> "Proceedings for the appointment of a receiver for an Association in liquidation shall not be entertained by any court except on the recommendation of the Auditor of State after he has investigated its affairs pursuant to the provisions of existing laws." Acts 1899, ch. LXIII, § 8, p. 85.

The court said:

> "There being no evidence in the record showing that the Auditor of State made the written recom-

mendation required by said section, the appointment of the receiver was in violation of the statute and unauthorized."

In the case of *State, ex rel., Meyer-Kiser Bank* v. *Superior Court of Marion Co.* (1931), 202 Ind. 589, 177 N. E. 322, the court below was prohibited from proceeding further in an action in which a receiver had been appointed for a state bank on the complaint of creditors. One judge concurred without and one with a separate opinion, while there were two dissenting opinions. On this state of the record it is somewhat difficult to determine the precise ground on which the decision rests. In the principal opinion it was recited that:

"Prior to the 1929 act (Acts 1929, ch. 161, p. 495), the exclusive right of a bank commissioner to apply for a receiver was questioned, but since that act gives him the right to exercise a discretion, among other things to apply to the court for the appointment of a receiver, we deem the question settled that he alone has such right."

This proposition was reiterated and emphasized in the concurring opinion of Judge Treanor, who quoted from the long and complicated Act of 1929 and said:

"We think the reasonable construction of the excerpt just quoted, keeping in mind the general purpose and intent of the General Assembly as revealed in the series of statutes, is that the Bank Commissioner has the exclusive privilege of applying for a receiver for a banking institution which is in a failing or insolvent condition, except as hereinafter pointed out; and that he may, as he did in this case, retain control and supervision through a liquidating committee until in his discretion the situation requires the appointment of a receiver."

This would seem to indicate that a majority of the court concurred in the view that the statute, properly

interpreted, required actions for the appointment of receivers for state banks to be prosecuted by the Bank Commissioner.

There is sound reason for sustaining the public policy frequently declared in statutes relating to banks and similar financial institutions, to the effect that actions for receivership may only be instituted by the administrative officer charged with their supervision. Such institutions are dependent upon continued public confidence and their usefulness may be destroyed by unwarranted and uncontrolled litigation. No such situation exists here, however, and it would amount to judicial legislation for us to read any such construction into the unambiguous statute before us.

One respondent says that the Probate Court of Marion County is vested with exclusive jurisdiction to supervise the administration of trusts within the territory that it serves, by virtue of § 10, ch. 151, Acts of 1907, § 4-2910, Burns' 1933, § 1786, Baldwin's 1934. That said Probate Court has supervisory authority over trusts cannot be denied; but such jurisdiction is by no means exclusive of the equity powers of other courts. *Hack, Rec.,* v. *Bolint* (1935), 101 Ind. App. 133, 191 N. E. 177. The Superior Court of Marion County is a tribunal with general civil jurisdiction. Acts 1871, ch. 22, § 10, § 4-1411, Burns' 1933, § 1604, Baldwin's 1934. The same is, of course, true of the Madison Circuit Court, § 4-303, Burns' 1933, § 1397, Baldwin's 1934.

As between courts of equal concurrent jurisdiction, in actions for the appointment of a receiver, that court which first acquires jurisdiction is entitled to exercise dominion over the subject-matter. *Givan, Rec.,* v. *Marion Superior Court* (1934), 207 Ind. 74, 191 N. E. 144. It is conceded by the par-

ties that the action of Kernel in the Superior Court of Marion County, Room 4, was commenced and resulted in the appointment of a receiver before the relators' suit in the Madison Circuit Court was filed. This is decisive.

The petitions are denied.

NOTE.—Reported in 51 N. E. (2d) 844.