SMITH ET AL. *v.* AMERICAN NATIONAL BANK OF INDIANAPOLIS ET AL.

[No. 17,637. Filed April 29, 1948. Rehearing denied June 9, 1948. Transfer denied September 28, 1948.]

414

*Herman W. Kothe, Grier M. Scotwell, Shubrick T. Kothe, and Owen S. Boling,* all of Indianapolis, attorneys for appellants.

*Perry E. O'Neal, Patrick J. Smith, Robert D. Morgan, Russell J. Ryan, Jr., and Fred J. Capp,* all of Indianapolis, attorneys for appellees.

CRUMPACKER, J.—While not necessary to a decision, we think the historical background of this litigation

will be helpful to a better understanding of the questions involved. The Fidelity Investment & Loan Association was incorporated under the laws of West Virginia in 1911 with power, *inter alia*, to engage in the business of writing and selling insurance of a type commonly known as annuity contracts. Its name was subsequently changed to Fidelity Investment Assocation and later to Fidelity Assurance Association which latter name still pertains and which we will hereafter abbreviate and call the Association. In 1925, the Association was admitted to do business in Indiana pursuant to the Foreign Investment Corporation Act of 1901. Acts of 1901, ch. 215, p. 487; Burns' Stat., § 25-3801, *et seq.* In 1935, the legislature repealed said Act but in doing so provided that no vested right, which had accrued under it, should be impaired by such repeal. Acts of 1935, ch. 179, § 19. Between 1925, when the Association was admitted to do business in Indiana, and April 1, 1935, when said repealing act became effective, said Association sold a large number of its annuity contracts to the people of this state and deposited with the Auditor of State securities of the par value of $150,000 for the protection of such contract or policy holders, pursuant to the provisions of the Act of 1901.

On December 12, 1933, the Association, the Auditor of State, and the Fletcher American National Bank of Indianapolis entered into a contract whereby the latter accepted custody of said securities deposited with the Auditor as aforesaid and the same, or others legally substituted therefor, were still in the possession of its successor American National Bank, hereinafter called American National, when this suit was instituted. After the repeal of the Foreign Investment Corporation Act of 1901, the Association, the Auditor

of State, and American National deemed it advisable to make a new agreement for the purpose of clarifying their various rights and liabilities with regard to the securities on deposit and on September 1, 1939, such a document was duly executed expressly canceling the agreement of December 12, 1933, and providing, among other things, as follows: "From and after the taking effect of this agreement the said securities of said Association mentioned and referred to in said agreement of December 12, 1933, together with any other securities which may have been heretofore or may be hereafter added thereto or substituted therefor, are hereby declared to constitute a trust fund for the sole benefit of such contract holders of the Association as are citizens of the State of Indiana and whose contracts were issued by said Association prior to April 1, 1938, to be held in trust by said trustee under the supervision and control of said state auditor as security for the faithful performance by the Association of all the terms and conditions of said contracts, and each of them, issued to citizens of the State of Indiana prior to April 1, 1935, and for no other purpose."

The Association continued to do business in this state until April 11, 1941, when the Auditor of State canceled its license because of litigation in West Virginia which resulted in an adjudication of insolvency and the appointment of the appellant H. Isaiah Smith and one Ross B. Smith receivers for the benefit of creditors. Subsequently said Ross B. Smith resigned as such receiver and the appellant Arthur P. Hudson was duly appointed in his stead and he, together with the appellant H. Isaiah Smith, are now the duly appointed and acting receivers for the Association in West Virginia, the State of its incorporation.

On the first day of May, 1941, the appellee Fidelity

Trust Company of Indianapolis, hereinafter called Fidelity Trust, and Willis N. Coval were appointed ancillary co-receivers for the Association by the Marion Superior Court in a cause brought for such purpose by Joseph E. Kernel, one of the Association's Indiana contract holders. On May 2, 1941, Richard T. James, the then Auditor of State, filed a petition in the Madison Circuit Court for the appointment of an ancillary receiver for the Association, naming it as the sole defendant. On the same day said Auditor, as such, was appointed receiver without notice but on the 5th day of May, 1941, he resigned such receivership as Auditor and was thereupon appointed receiver in his individual capacity.

This situation brought about litigation invoking the original jurisdiction of the Supreme Court to determine which of the above receivers was entitled to administer the assets of the Association in Indiana. In *State ex rel. James* v. *Marion Superior Court* (1943), 222 Ind. 26, 51 N. E. 2d 844, the Supreme Court held that "As between courts of equal concurrent jurisdiction in actions for the appointment of a receiver, that court which first acquires jurisdiction is entitled to exercise dominion over the subject-matter." As it was conceded that the action of Kernel in the Marion Superior Court was commenced and resulted in the appointment of a receiver before the James suit in the Madison Circuit Court was filed, the court decided that the Marion Superior Court, through its co-receivers Fidelity Trust and Coval, should administer the fund.

Prior to the time the State ex rel. James case, *supra,* was filed in the Supreme Court, American National brought the suit now before us, which it calls an action in the nature of an interpleader, in the Marion Probate Court and named H. Isaiah Smith and Arthur P. Hud-

son, receivers for the Association in West Virginia, and others as parties defendant. Attached to the complaint is an exhibit, denominated a final report, showing a full and complete accounting of American National's doings as alleged trustee under the agreement of September 1, 1939.

The salient allegations of said complaint may be summarized as follows: That American National is the trustee of an express written trust; that under the terms of such trust certain securities were deposited with it as trustee; that the reason for which it was appointed trustee has ceased to exist; that it is unsafe for it to deliver said securities to any one of the several claimants; that it is entitled to a decree determining whether it has properly accounted for the property and assets of said trust, fixing the amount of its compensation as trustee and the compensation of its counsel, approving its final report and directing to whom the assets of said trust should be delivered.

As far as the briefs of counsel disclose none of the several defendants joined issue on this complaint, except one Lillie La Hommedieu who filed an answer and cross-complaint, nor are we informed by said briefs as to how the court obtained jurisdiction of the other defendants and as to whether or not judgment went against them by default.

On December 20, 1943, the Supreme Court filed its decision in *State ex rel. James* v. *Marion Superior Court, supra,* declaring that said Marion Superior Court, through its co-receivers Fidelity Trust and Coval, should have exclusive jurisdiction to administer all assets of the Association in Indiana. On June 29, 1944, the present case came to trial before the Marion Probate Court and on said day said court entered a decree approving American National's final accounting

and allowing fees for its services as trustee in the sum of $2500 and attorneys' fees in a total amount of $3605.13. Said decree further directs that the assets of the Association in American National's hands, after the deduction of such fees, be turned over to Fidelity Trust and Coval as the Indiana co-receivers for the Association under appointment of the Marion Superior Court as decided by the Supreme Court in the State ex rel. James case.

No one seems to be complaining about this decree except the West Virginia receivers for the Association, who are the sole appellants among the several defendants below. None of the appellees, except American National have favored us with a brief and we acknowledge their indifference to the outcome of this appeal.

The appellants' major contentions, supported by various specified reasons, may be summarized as follows: (1) The Probate Court of Marion County was without jurisdiction of the subject-matter of this litigation and therefore the judgment herein is void; (2) the Foreign Investment Corporation Act of 1901, which still governs the relation and rights of the parties to this litigation, prohibits the creation of an express trust concerning the property in controversy and the contract of September 1, 1939, upon which the appellee American National relies, amounts to nothing more than a depository agreement; (3) that said appellee's services, for which it recovered below, were rendered, upon its own initiative, after the property involved was in *custodia legis* and under control of the Marion Superior Court, acting through its co-receivers Fidelity Trust and Coval, and therefore performed wholly without right or authority; and (4) said appellee's duties being merely those of a depository, the amount of its recovery is grossly excessive.

Shortly after the submission of this cause to us the appellee American National asked that the appeal be dismissed on the theory that all questions raised, ■ as indicated above, are moot. We declined to order dismissal because we were of the opinion that the motion did not go to the jurisdiction of this court to entertain the appeal, but if the questions raised are moot the judgment below should be affirmed rather than the appeal dismissed. In this conclusion we were wrong as it seems to be well settled that the existence of an actual controversy is ordinarily required as an essential requisite to appellate jurisdiction. *Drudge* v. *Citizens Bank of Akron* (1932), (Ind. App.) 183 N. E. 554, 555 (Reversed on another point, (1936), 209 Ind. 638, 196 N. E. 111) ; *Mills* v. *Green* (1895), 159 U. S. 651, 653, 40 L. Ed. 293, 294; *Chaitlen* v. *Kaspar Amer. State Bank* (1939), 372 Ill. 83, 22 N. E. 2d 673, 675; *U. S.* v. *Alaska S. S. Co.* (1920), 253 U. S. 113, 116, 64 L. Ed. 808, 809. At any rate the contention is now renewed and if well taken it is obvious that a decision on the merits of the questions above indicated is unnecessary and therefore would amount to nothing more than *obiter dictum*.

The record discloses that, following the entry of the judgment attacked by this appeal, the appellee, American National, deducted the amount of the ■ fees allowed to it and its counsel from the fund in its possession and paid the balance thereof to Fidelity Trust and Coval, the Marion Superior Court's co-receivers, and said court thereupon entered a decree which provides, among other things, "That American National Bank at Indianapolis as such trustee has fully accounted to the co-receivers appointed by this court for Fidelity Assurance Association, for all the trust funds coming into its possession pursuant

to said agreement of September 1, 1939, and nothing remains due from such trustee to said co-receivers." We must assume that when this decree was entered the Marion Superior Court was duly advised in the premises and, as said decree remains unmodified, unvacated and unappealed from, we are compelled to regard it as the final judgment of said court giving sanction to the manner in which American National handled the funds in controversy and approving its fees and those of its counsel for services rendered. It is conceded by the appellants that jurisdiction of the subject matter lay with the Marion Superior Court and assuming, without deciding, that the judgment of the Marion Probate Court was wholly extra-judicial, such judgment in its entirety was reviewed by a court that admittedly had jurisdiction and was adopted by that court as its own. The appellants' sole objection to this process of reasoning is that they were not parties to the Kernel suit in the Marion Superior Court which resulted in vesting in that court the exclusive jurisdiction of all of the Association's Indiana assets and therefore they are not bound by its decree. In making this contention they chose to overlook the fact that the Association was a party to the Kernel suit and the Marion Superior Court receivership was merely ancillary to their own. They had the right and duty to see that such court administered the assets of the Association in its custody in accordance with the law, and with such court lay the remedy for the alleged wrongs of which they now complain.

For the reasons stated we are convinced that all questions raised by this appeal are moot and the same. is therefore dismissed.

NOTE.—Reported in 78 N. E. 2d 874.