COMMISSIONER OF BANKS *vs.* PRUDENTIAL TRUST COMPANY & others.

Suffolk.    March 7, 15, 1922. — June 28, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, & CARROLL, JJ.

*Trust Company,* Stockholders' liability, In liquidation. *Commissioner of Banks.* *Constitutional Law,* Police power, Banking laws. *Statute,* Construction.

The commissioner of banks, when, pursuant to the provisions of G. L. c. 167, he takes and retains possession of the property and business of a trust company for the purposes of liquidation according to law, carries out a legislative policy and not a judicial direction and, while clothed with some of the powers of a receiver and in many respects subject to the direction of the court, he is not a receiver, but is an executive or administrative and not a judicial officer.

It is an established rule that the adjudged interpretation of the words of a statute by the courts of the jurisdiction where it was enacted is intended to be adopted when afterwards the same statute is passed by the Legislature of another State or country.

A bill in equity by the commissioner of banks against the stockholders of a trust company contained allegations that he was in possession of the property and business of the trust company under G. L. c. 167, that a creditor had obtained a judgment against the company, that execution had issued thereon, that demand for payment was refused by the company, that for thirty days thereafter the company had refused and neglected to exhibit to the officer any property subject to be taken on execution, that the execution had been returned unsatisfied, that the commissioner by a decree of court in appropriate proceedings had been authorized to enforce the liability of stockholders in accordance with the provisions of law, that it was necessary, in order to pay the debts of the company, to enforce the individual liability of the stockholders to the extent of $100 per share and that the commissioner had so determined. The prayers of the bill were "that the liability of the stockholders be determined," and "that the stockholders be ordered to pay the amount for which they may be found liable to the plaintiff to the extent of $100 per share." *Held,* that the suit was based on G. L. c. 167, § 24, and not on G. L. c. 172, § 25.

A suit in equity by the commissioner of banks against the stockholders of a trust company of the property and business of which he is in possession under the provisions of G. L. c. 167, to enforce under § 24 of the statute to the amount of $100 per share the stockholders' liability arising under G. L. c. 172, § 24, may be maintained on the determination of the commissioner of banks alone that an assessment of one hundred per cent on the shares of stock is necessary to pay the creditors of the company, and the stockholders are not entitled, before such suit is brought, to a hearing with full examination of the assets and liabilities of the company and a determination by the court of the necessity and amount of the assessment. Following *Kennedy* v. *Gibson,* 8 Wall. 498.

G. L. c. 167, § 24, violates no provision of art. 14 of the Amendments to the Federal Constitution.

The liability of a stockholder to be responsible for debts of a trust company is a part of the contract by which the trust company assents to come into existence, and each person when he assumes the relation of a shareholder, whether at the organization or later, consents to this condition and becomes a party to its terms: this obligation, even though created by statute, is contractual in its nature and a stockholder cannot successfully assail the constitutionality of such an obligation assumed by his own free will.

The business of banking is of such general public interest as to be under the control of the Legislature within rational limits.

The determination by the commissioner of banks, in the circumstances above described, to collect an assessment of one hundred per cent from the shareholders of the trust company was not the exercise of a judicial function: it was a practical business question to decide whether in the economical and expeditious settlement of an insolvent trust company the entire amount collectible should be demanded at once and the balance, if any, after paying the debts, be returned, or whether, in the general interest of all concerned, a less amount should be assessed.

No right secured by arts. 10, 11, 12 or 30 of the Declaration of Rights is violated by G. L. c. 167, § 24.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 22, 1921, and afterwards amended, by the commissioner of banks in possession of the property and business of the Prudential Trust Company against the Prudential Trust Company and seventy-two stockholders, praying "that the liability of the stockholders be determined," and "that the stockholders be ordered to pay the amount for which they may be found liable to the plaintiff to the extent of $100 per share."

The suit was heard by *Crosby,* J., upon the bill and the answers of certain defendants. It appeared that no issue was raised except under a paragraph of the bill in which it was alleged that it was "necessary to pay the debts of said Prudential Trust Company to enforce the individual liability of the stockholders to the extent of $100 per share" and that the commissioner had so determined. The only evidence of the necessity to enforce the individual liability of the stockholders was the determination by the commissioner of banks that an assessment of one hundred per cent on the holdings of the stockholders was necessary to pay the creditors of the Prudential Trust Company. The single justice found that, if he had "the power to so determine, unsupported by any report of assets or claims of the Prudential Trust Company, . . . the commissioner has so determined. The

single justice ruled that the commissioner had the power so to determine," and reported for determination by the full court the question, whether or not a decree should be entered in this proceeding against stockholders of the Prudential Trust Company for an assessment of one hundred per cent upon the capital stock owned and held by them, upon such determination by the commissioner alone, if he had the right so to determine. "If the full court is of opinion that such decree can be made upon evidence only of such determination by the commissioner (if he has the power so to determine), then a decree is to be entered for the plaintiff requiring each defendant to pay the sum of $100 for each share of stock in the Prudential Trust Company owned by him. If the court is of the opinion that such decree cannot be made upon such evidence only, and that stockholders are entitled to a full examination of the assets and liabilities of the Prudential Trust Company, so that the court may determine what, if any, assessment is necessary, then the case is to be referred to a single justice or master for such further action as may be necessary."

G. L. c. 172, § 24, reads as follows: "The stockholders of such corporation shall be personally liable, equally and ratably and not one for another, for all contracts, debts and engagements of the corporation, to the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares. Sections forty-six, forty-seven and forty-nine to fifty-four inclusive, of chapter one hundred and fifty-eight shall apply to and regulate the enforcement of such liability, and receivers of insolvent trust companies may, with the approval of the Supreme Judicial Court, enforce such liability."

G. L. c. 167, § 24, reads as follows: "Upon taking possession of the property and business of such bank, the commissioner may collect moneys due to the bank, and do all acts necessary to conserve its assets and business, and shall proceed to liquidate its affairs as hereinafter provided. He shall collect all debts due and claims belonging to it, and upon the order or decree of the Supreme Judicial Court, or any justice thereof, may sell or compound all bad or doubtful debts, and on like order or decree may sell all, or any part of, the real and personal property of the bank on such terms as the court shall direct; and he

may, if necessary to pay the debts of any such trust company, enforce the individual liability of the stockholders."

G. L. c. 172, § 25, reads as follows: "Any such corporation whose stockholders are liable under the preceding section and whose capital stock has, in the opinion of the commissioner, become impaired by losses or otherwise, shall, within three months after receiving notice from the commissioner, pay the deficiency in the capital stock by assessment upon the stockholders pro rata to the shares held by each. If such corporation shall fail to pay such deficiency in its capital stock for three months after receiving such notice, the commissioner may apply to the Supreme Judicial Court for an injunction; and if a stockholder of such corporation neglects or refuses, after three months' notice, to pay the assessment as provided in this section, the board of directors shall cause an amount of his stock sufficient to make good his assessment to be sold by public auction, after thirty days' notice given by posting such notice in the office of the corporation and by publishing it in a newspaper of the city or town where the corporation is located or in a newspaper published nearest thereto; and the balance, if any, shall be returned to such delinquent stockholder. This section shall not take away the right of creditors to enforce the liability of stockholders in such corporations, as provided in the preceding section, nor increase the general liability of such stockholders."

*J. E. Hannigan,* for the commissioner of banks.

*H. Williams, Jr.,* for John J. Hagerty, a stockholder of the Prudential Trust Company.

*W. S. McCallum,* for certain other stockholders, submitted a brief.

RUGG, C.J. This is a petition by the commissioner of banks against the Prudential Trust Company, hereafter called the Company, and its stockholders. The commissioner of banks has taken and retains possession of the property and business of the Company under St. 1910, c. 399, as amended (see now G. L. c. 167). No question is made of its inability to meet its obligations. The object of this suit is to collect from the stockholders of the Company their statutory liability for its debts. It is alleged in the bill that a creditor obtained judgment against the Company, that execution issued thereon, that demand for

payment was refused by the Company and for thirty days thereafter the Company refused and neglected to exhibit to the officer any property subject to be taken on execution, and that the execution has been returned unsatisfied. In these respects there appears to have been compliance with the requirements of G. L. c. 158, § 46, prerequisite to the establishment of stockholders' liability. *Nichols* v. *Taunton Safe Deposit & Trust Co.* 203 Mass. 551, 554. It also is alleged that the commissioner of banks by decree of court upon an appropriate petition has been authorized to enforce the liability of stockholders in accordance with the provisions of law.

The single point in issue is whether on these facts the suit can be maintained on the determination of the commissioner of banks alone that an assessment of one hundred per cent on the shares of stock is necessary to pay the creditors of the Company, or whether the stockholders are entitled to a hearing with full examination of the assets and liabilities of the Company and a determination by the court of the necessity and amount of the assessment. The decision of this point depends upon the construction of the governing statutes. These are certain sections of G. L. c. 167 and c. 172. The pertinent provisions as to the power of the commissioner of banks first were enacted in St. 1910, c. 399. The General Court then adopted in many respects a new policy concerning the supervision and the liquidation of trust and certain other banking companies organized under the laws of this Commonwealth. The powers of the State officials were greatly enlarged. The commissioner of banks was authorized on his own judgment and responsibility, without the intervention of the court, when enumerated facts were made to appear to him, to take possession forthwith of the business and property of a banking corporation and to retain possession until it should resume business or until its affairs should be liquidated finally. Large powers as to such liquidation are conferred upon him.

It already has been decided that the commissioner of banks in the liquidation of trust companies is an executive or administrative and not a judicial officer. When pursuant to the statute he takes and retains possession of the property and business of a trust company for purposes of liquidation according to law,

he is not a receiver. While clothed with some of the powers of a receiver and in many respects subject to the direction of the court, he nevertheless carries out a legislative policy and not a judicial direction. *Greenfield Savings Bank* v. *Commonwealth*, 211 Mass. 207, 209. *Commonwealth* v. *Commissioner of Banks*, 240 Mass. 244.

Stockholders' liability of the kind here in suit has existed under the law for many years. See St. 1888, c. 413, § 14. The method for its enforcement by judgment creditors and by receivers, now set out in G. L. c. 172, § 24, also has long been a part of our law. When the power of the commissioner of banks was enlarged by St. 1910, c. 399, it was provided in § 4 that "he may, if necessary to pay the debts of any such trust company, enforce the individual liability of the stockholders." These words are found without material change in G. L. c. 167, § 24.

It is manifest that this as well as some other provisions of our banking law were taken without substantial change and in almost the same words from the national bank act. It is provided in U. S. Rev. Sts. § 5234, among other matters, that the appointee of the comptroller of the currency and under his direction "may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders." The liability sought to be enforced in the present proceeding is that established by G. L. c. 172, § 24, whereby shareholders are made "personally liable, equally and ratably and not one for another, for all contracts, debts and engagements of the corporation, to the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares." This form of liability goes back at least to St. 1888, c. 413, § 14. The liability of stockholders in national banks, as phrased in U. S. Rev. Sts. § 5151, is this: "The shareholders . . . shall be held individually responsible, equally and ratably, and not for one another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares," with exceptions not here significant. The sections of our own statute and of the national banking law from which these provisions have been quoted cover in other essential particulars important aspects of the liquidation of banking institu-

tions to which they severally relate. Plainly the national bank act as to dissolution and liquidation was used as the model for our statute in this respect. In G. L. c. 167, § 34, as in § 5237 of U. S. Rev. Sts. there is provision for distribution of the proceeds of liquidation after paying debts and expenses equitably among the stockholders. The inference is strong, if not irresistible, that in thus copying vital parts of our statute from the Act of Congress the General Court was content to accept also the meaning of the statutory words as expounded by the Supreme Court of the United States. It is an established rule that the adjudged interpretation of the words of a statute by the courts of the jurisdiction where it was enacted is intended to be adopted when afterwards the same statute is passed by the Legislature of another State or country. Courts of the latter State or country commonly feel constrained to give to the statute the same construction as that earlier given it by the courts of the State or country first enacting it, in the absence of compelling reasons to the contrary. *Commonwealth* v. *Hartnett,* 3 Gray, 450. *Pratt* v. *American Bell Telephone Co.* 141 Mass. 225, 227. *Ryalls* v. *Mechanics' Mills,* 150 Mass. 190, 193. *McNicol's Case,* 215 Mass. 497. *Woods* v. *Woburn,* 220 Mass. 416, 419. *Ward* v. *Great Atlantic & Pacific Tea Co.* 231 Mass. 90, 95.

The Supreme Court of the United States in 1869 interpreted the force and effect of the National Bank Act in respect of the power of comptroller of the currency and his appointee (called in that act "receiver" although not appointed by a court) to enforce the liability of shareholders of national banks of whose assets he had taken possession. It was held in *Kennedy* v. *Gibson,* 8 Wall. 498, 505, 506, that "The receiver is the instrument of the comptroller. . . . It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him. This action on his part is indispensable, whenever the personal liability of

the stockholders is sought to be enforced, and must precede the institution of suit by the receiver. . . . It would be attended with injurious consequences to forbid action against the stockholders until the precise amount necessary to be collected shall be formally ascertained. This would greatly protract the final settlement, and might be attended with large losses by insolvency and otherwise in the intervening time. The amount must depend in part upon the solvency of the debtors and the validity of the claims. Time will be consumed in the application of these tests, and the results in many cases cannot be foreseen. The same remarks apply to the enforced collections from the stockholders. A speedy adjustment is necessary to the efficiency and utility of the law; the interests of the creditors require it, and it was the obvious policy and purpose of Congress to give it. If too much be collected, it is provided by the statute, that any surplus which may remain after satisfying all demands against the association, shall be paid over to the stockholders. It is better they should pay more than may prove to be needed than that the evils of delay should be encountered." This interpretation has been followed strictly in subsequent adjudications and upheld against all constitutional objections. *Casey* v. *Galli,* 94 U. S. 673. *National Bank* v. *Case,* 99 U. S. 628, 634, 635. *United States* v. *Knox,* 102 U. S. 422. *Bushnell* v. *Leland,* 164 U. S. 684. *In re Chetwood, petitioner,* 165 U. S. 443, 458. *Studebaker* v. *Perry,* 184 U. S. 258. *McClaine* v. *Rankin,* 197 U. S. 154, 159. *Christopher* v. *Norvell,* 201 U. S. 216, 222. *Rankin* v. *Barton,* 199 U. S. 228, 232. *Miller* v. *Hamner,* 269 Fed. Rep. 891, 894.

The rule of the United States Supreme Court has been followed in other States where the substance of the national bank law has been enacted with reference to State banks. *Davis* v. *Moore,* 130 Ark. 128. *Aber* v. *Maxwell,* 140 Ark. 203. *Collier* v. *Smith,* 169 S. W. Rep. 1108. *Stringfellow* v. *Patterson,* 192 S. W. Rep. 555. *Hanson* v. *Soderberg,* 105 Wash. 255. *Van Tuyl* v. *Scharmann,* 208 N. Y. 53, 62, 63. *Harris* v. *Briggs,* 264 Fed. Rep. 726 (C. C. A.). It does not seem to us that *Ueland* v. *Haugan,* 70 Minn. 349, *Sargent* v. *Waterbury,* 83 Ore. 159, *Pate* v. *Bank of Newton,* 116 Miss. 666, or *Lynch* v. *Jacobsen,* 55 Utah, 129, are opposed to this rule, for the reason that the statutes construed in those

several decisions differ from that here in question and appear to require the assessment to be made or approved by the court, or that the plaintiff was acting chiefly as receiver appointed by the court and not as an administrative officer. If the decision of *Van Tuyl* v. *Carpenter*, 135 Tenn. 629, cannot be supported on other grounds and is contrary to the conclusion here reached, we are constrained not to follow it.

Other reasons confirm this construction of our statute. It is provided that receivers can enforce the liability of shareholders in insolvent trust companies only with the approval of the Supreme Judicial Court. G. L. c. 172, § 24. *Coyle* v. *Taunton Safe Deposit & Trust Co.* 216 Mass. 156, 162. Requirement for such approval by the court when the commissioner of banks enforces the liability of stockholders is omitted from G. L. c. 167, § 24. This omission is significant of a legislative purpose that such approval was not an essential prerequisite although appropriately it was secured by the plaintiff in the case at bar before instituting this proceeding. Judgment creditors of business corporations may enforce the narrow stockholders' liability created by G. L. c. 158, § 45, by direct suit without approval of the court. *Priest* v. *Essex Hat Manuf. Co.* 115 Mass. 380. *Clarke* v. *Warwick Cycle Manuf. Co.* 174 Mass. 434. The liability of stockholders of a State bank for the redemption of its circulating notes could be enforced by receiver only after approval by the Supreme Judicial Court. R. L. c. 115, § 81. *Commonwealth* v. *Cochituate Bank*, 3 Allen, 42, 46. The amount to be recovered often of necessity has been settled by decree of the court. *Crease* v. *Babcock*, 10 Met. 525, 555–568. Other provisions of statutes permit direct suit against officers liable without approval of the court. *Thacher* v. *King*, 156 Mass. 490. *E. S. Parks Shellac Co.* v. *Harris*, 237 Mass. 312. The analogy between these other provisions of our statutes and G. L. c. 167, § 24, is not very close but they tend to show that it was not the intent of the Legislature in enacting the latter section to hamper the powers of the commissioner of banks.

The present suit is not grounded on G. L. c. 172, § 25. That relates to a different matter from that here involved.

The provisions of St. 1910, c. 399 (see now G. L. c. 167), were

designed in no small part to be a practical measure to ascertain, protect and establish speedily the rights, obligations and duties of depositors, creditors, debtors, stockholders and others directly or indirectly liable for the debts of an insolvent trust company or entitled to share in its assets, to the end that its affairs may be settled as expeditiously as is reasonably practicable. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 240 Mass. 254. The large numbers of creditors likely to exist in every bank failure, and the financial embarrassment and suffering almost inevitably connected with such an event, render it highly desirable on every ground of policy that the available assets be marshalled and distributed at the earliest moment consistent with sound principles of liquidation.

The principle and the reasoning of *Kennedy* v. *Gibson*, 8 Wall. 498, and the decisions of the United States Supreme Court which follow it, are adopted as matter of statutory interpretation as the law of this Commonwealth upon this point.

The federal cases already cited are sufficient authority to the effect that our statute thus interpreted violates no provision of the Fourteenth Amendment to the Constitution of the United States.

It is equally clear that no provision of the Constitution of this Commonwealth is infringed by the statute.

The liability of a stockholder to be responsible for debts of the corporation is a part of the contract by which the corporation assents to come into existence, and each person when he assumes the relation of a shareholder, whether at the organization or later, consents to this condition and becomes a party to its terms. The obligation, even though created by statute, is contractual in its nature. Whoever undertakes the relation of shareholder voluntarily enters into an implied contract to bear such deficiency as may rest upon him under the statute. Any rational method of determining the extent of the liability of the shareholder prescribed by the statute is a part of the contract. No discussion is required to show that this statute does not violate fundamental rights, as would a provision, for example, not to resort to federal courts in case of diversity of citizenship. The validity of statutes imposing upon stockholders liability to a greater or less extent for the debts of a corporation has been

too long recognized as valid to be open to question at this late day. Indeed, their enforceability never seems to have been seriously doubted. *Marcy* v. *Clark,* 17 Mass. 330, 334. *Stone* v. *Wiggin,* 5 Met. 316. *Kimball* v. *Whitney,* 233 Mass. 321, 333. See *Child* v. *Boston & Fairhaven Iron Works,* 137 Mass. 516, for an historical review of our statutes concerning stockholders' liability for debts of corporations. The stockholder cannot successfully assail the constitutionality of such an obligation assumed by his own free will. *Hancock National Bank* v. *Ellis,* 172 Mass. 39. *Converse* v. *Ayer,* 197 Mass. 443, 453. *Weitzel* v. *Brown,* 224 Mass. 190, 193. *Rockport Water Co.* v. *Rockport,* 161 Mass. 279. *Butterworth* v. *Ross,* 238 Mass. 279. *Attorney General* v. *Pelletier,* 240 Mass. 264, 297. *Interstate Consolidated Street Railway* v. *Massachusetts,* 207 U. S. 79. *Ashley* v. *Ryan,* 153 U. S. 436, 443. *Newburyport Water Co.* v. *Newburyport,* 193 U. S. 561, 579. *International & Great Northern Railway* v. *Anderson County,* 246 U. S. 424, 433. *Calhoun* v. *Massie,* 253 U. S. 170, 177.

The business of banking is of such general public interest as to be under the control of the Legislature within rational limits. The Commonwealth may act as the creator and controller of corporations for the benefit of depositors and other creditors. *Noble State Bank* v. *Haskell,* 219 U. S. 104, 575. *Lorando* v. *Gethro,* 228 Mass. 181, 187. *Title Guaranty & Surety Co.* v. *Allen,* 240 U. S. 136.

The determination by the commissioner of banks to collect an assessment of one hundred per cent from the shareholders is not the exercise of a judicial function. It is a practical business question to decide whether in the economical and expeditious settlement of an insolvent bank the entire amount collectible shall be demanded at once and the balance, if any, after paying the debts, be returned, or whether, in the general interest of all concerned a less amount be assessed. The court itself might proceed on that principle for in kindred cases it has acted upon estimated necessities rather than upon an absolute ascertainment. *Commonwealth* v. *Cochituate Bank,* 3 Allen, 42, 46.

It follows that there is in this statute no infraction of the rights secured by arts. 10, 11, 12 or 30 of the Massachusetts Declaration of Rights.

In accordance with the terms of the report, a decree may be

entered for the plaintiff requiring each shareholding defendant to pay the sum of $100 for each share of stock in the Prudential Trust Company owned by him.

*So ordered.*