### ROBINSON *v.* PEOPLE'S BANK OF LESLIE.

1. Banks and Banking—Statutes—Conservators.

   Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933, providing that State banking commissioner with the consent of the governor may "take over as conservator the custody and management" of a bank and all its assets and select some suitable person to do so does not repeal but is supplemental to Act No. 66, Pub. Acts 1929 (3 Comp. Laws 1929, § 11898 *et seq.*), as amended, codifying the State banking laws.

2. Same—Constitutional Law—Limitation on Powers of Officers.

   Act No. 32, Pub. Acts 1933, as amended, does not vest in banking commissioner authority of a judicial nature as receiverships for liquidation and reorganization proceedings are subject to review by the courts and does not, therefore, violate Constitution 1908, art. 4, § 2, providing that no person belonging to one department of government shall exercise powers properly belonging to another.

3. Same—Closed Banks.

   Act No. 32, Pub. Acts 1933, as amended, was passed to meet economic emergency and conserve assets of large number of banks in State closed by proclamation of president and governor and to permit banks to reopen, if possible, or to reorganize.

4. Same—Receivers—Appointment—Due Process.

> Appointment of receiver of a bank without prior judicial determination of necessity therefor is not deprivation of property without due process of law as banking commissioner makes determination of necessity even under statute authorizing such appointments to be made by courts. Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933; 3 Comp. Laws 1929, § 11898 *et seq.*)

5. Same—Supervision—Police Power—Equity—Jurisdiction.

> State supervision of banks is an exercise of the police power and has nothing to do with original jurisdiction of chancery courts as preserved by the Constitution.

Appeal from Ingham; Carr (Leland W.), J. Submitted February 7, 1934. (Docket No. 143, Calendar No. 37,713.) Decided March 6, 1934.

Bill by Carl L. Robinson and another against People's Bank of Leslie, Alvin L. Dowling, conservator, and Rudolph E. Reichert, State banking commissioner, to restrain reorganization of defendant bank, for appointment of receiver, and for other relief. Decree for defendants. Plaintiffs appeal. Affirmed.

*Edward F. Behan,* for plaintiffs.

*Frank L. Blackman* and *Tuttle & Tuttle,* for defendants bank and conservator.

*Patrick H. O'Brien,* Attorney General, and *Walter A. Kirkby* and *Byron Geller,* Assistants Attorney General, for defendant State banking commissioner.

Nelson Sharpe, C. J. The defendant People's Bank of Leslie is a Michigan banking corporation. On March 28, 1933, the defendant Rudolph E. Reichert, commissioner of banking, assuming to act under the provisions of Act No. 32, Pub. Acts 1933, took over the custody, management and control of said bank, and appointed the defendant Alvin L. Dowling

conservator thereof, who since that time has had the supervision and direction of its affairs. A plan for its reorganization is in course of execution. On November 29, 1933, the banking commissioner levied and assessed a 100 per cent. stock assessment against all of the stockholders of the bank.

The plaintiffs have money on deposit in said bank, and filed the bill of complaint herein to restrain further action on the part of the commissioner and for the appointment by the court of a receiver for said bank. The relief sought is based upon the claim that Act No. 32, which was later amended by Act No. 95, Pub. Acts 1933, is unconstitutional and void. From an order dismissing the bill the plaintiffs have taken this appeal.

Three questions are presented and argued by counsel:

1. Does the act so amended violate article 4 of the State Constitution, which provides for three departments of government, and that no person belonging to one department shall exercise the powers properly belonging to another?

2. Does it impair the obligation of a contract?

3. Does it violate the due process clause of the State and Federal Constitutions?

The banking laws of this State were revised and codified in Act No. 66, Pub. Acts 1929 (3 Comp. Laws 1929, § 11898 *et seq.*). It contains provisions under which banks are organized and permitted to do business. It provides for the appointment by the governor of a commissioner of the banking department, and defines his powers and duties. The banks are subject to his inspection and supervision.

When he concludes from an examination that a bank is in an unsound or unsafe condition to transact its business, it is made his duty to communicate

such facts to the attorney general and, with his concurrence, application may be made to a court of competent jurisdiction for the appointment of a receiver thereof, and, if the court be satisfied that the condition of the bank warrants such action, he shall immediately appoint the banking commissioner, his deputy, or one of the banking examiners, or some other disinterested person, recommended by the banking commissioner, as receiver, and its affairs will then be wound up under the direction of the court. These provisions are in the interest and for the protection of the depositors and others transacting business with the bank. By an amendment contained in Act No. 8, Pub. Acts 1932 (1st Ex. Sess.), provision is made for a reorganization by petition to the court of the commissioner, or of a committee of the depositors, and its approval thereof.

This law is not repealed by Act No. 32, as amended, which is supplemental thereto, and under which, when application is made by the directors, or when any bank has failed, neglected or refused to comply with rules and regulations promulgated for its guidance, or when the conditions are such as would permit the appointment of a receiver by the court, the banking commissioner, with the consent of the governor, is empowered ''to take over as conservator the custody and management'' of the bank ''and all the deposits, moneys, funds, assets, property, both real and personal, belonging to or in the custody or control of said bank,'' and may manage the same, or select some suitable person to do so, in the manner provided therefor. He may continue to operate it in what he believes to be the best interests of the depositors, creditors, borrowers, and all other parties in interest. And if, through the

efforts of its officers, directors or stockholders, it is able to so adjust its affairs that it can reopen and continue its business with safety, dissolution will not be required. During this period no proceedings in court are provided for.

If he decides to wind up the affairs of the bank, he may appoint a receiver for that purpose, "who shall proceed to close up such bank or trust company, and enforce the statutory liability of the stockholders, as provided by law," and "upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such bank or trust company, on such terms as the court shall direct."

To enforce the statutory liability of the stockholders, unless voluntarily paid by them, actions therefor in court must be brought. It will thus be seen that, when liquidation is sought, the court takes charge of the proceedings, directing the action of the receiver appointed by the commissioner.

If, in the opinion of the commissioner, a reorganization can be effected, or if the depositors appoint a committee with that end in view, the plan therefor must be submitted to the court and its approval thereof be obtained.

A comparison of the powers conferred and the duties imposed on the commissioner of banking under the code, as amended, and under Act No. 32, as amended, does not disclose that the additional authority vested in the commissioner in the latter is of a judicial nature. Under it, if the condition of the bank is such as warrants action on his part, he may take charge of it as a conservator and operate it in the interest of all parties concerned in the hope that through his efforts, or the efforts of its officers,

directors or stockholders, a reorganization may be had. The details of the plan therefor must be published and are subject to review by the court on application therefor by any creditor, stockholder or depositor whose rights are affected thereby. If, in the opinion of the commissioner, the bank must be liquidated, he then appoints a receiver and applies to the court for such action as may be necessary to accomplish this result. Under the code the court appoints the receiver, but it will be noticed that in doing so it may appoint only the commissioner, a deputy, or an examiner, or a disinterested person recommended by the commissioner. His appointment is but in effect a recommendation to the court of a person whom, from his knowledge of the condition of the bank, he deems to be specially fitted for such position.

Act No. 32, as amended, was passed to meet the economic emergency then existing. Under the proclamations of the president and the governor, a large number of State banks were then closed, and the purpose of this legislation was to aid in the conservation of their assets and to permit them to reopen if possible, or reorganize under the provisions therefor.

The banking commissioner was sworn as a witness at the hearing on the motion to dismiss. He testified that, since the enactment of Act No. 32 and its amendment, 89 State banks had been reorganized and are now open and doing business and applications for the reorganization of eight other banks are pending. The deposits in these banks were approximately $85,000,000. Of this amount, about 53 per cent. had already been made available to the depositors. He expressed the belief from his experience of seven years as banking commissioner

"that orderly liquidation of an operating corporation is much more beneficial to the creditors than a court liquidation where the assets have to be reduced to cash."

The wisdom of the enactment is thus apparent.

The conclusion reached is, we think, supported by abundant authority. In title "Banks and Banking" (12 USCA), provision is made in section 2 for the appointment of a "comptroller of the currency." In section 191 it is provided that:

"Whenever the comptroller shall become satisfied of the insolvency of a national banking association, he may, after due examination of its affairs, * * * appoint a receiver who shall proceed to close up such association, and enforce the personal liability of the shareholders, as provided in section 192."

In an action brought to enforce the liability of a stockholder, the supreme court of the United States, in *Bushnell* v. *Leland,* 164 U. S. 684, 685 (17 Sup. Ct. 209), said:

"All these alleged errors may be reduced to the single contention that under the national banking law the comptroller of the currency is without power to appoint a receiver to a defaulting or insolvent national bank, or to call for a ratable assessment upon the stockholders of such bank, without a previous judicial ascertainment of the necessity for the appointment of the receiver and of the existence of the liabilities of the bank, and that the lodgment of authority in the comptroller, empowering him either to appoint a receiver or to make a ratable call upon the stockholders, is tantamount to vesting that officer with judicial power in violation of the Constitution. All of these contentions have been long since settled, and are not open to further discussion."

While the Federal Constitution contains no express provision prohibiting the exercise of judicial power by persons other than judicial officers, as does that of this State (article 4, § 2), it provides for three departments of the government, the legislative, the executive, and the judicial, and, with the limitations provided for therein, all judicial power is vested in its courts. *Kilbourn* v. *Thompson,* 103 U. S. 168.

This question is discussed at some length in 7 Michie on Banks and Banking (Perm. Ed.), p. 361. It is there said:

"In certain contingencies, the comptroller of the currency is expressly authorized to appoint a receiver for an insolvent national bank, without a prior judicial determination of the necessity for such receiver. The authority thus vested is not open to objection because vesting that officer with judicial power in violation of the Constitution."

Volume 3 of this work, pp. 34 to 37, contains a summary of the procedure followed in a number of the States where by statute an official of the State is given the power and authority to liquidate insolvent banks under the procedure set forth therein.

In High on Receivers (4th Ed.), § 39, p. 52, it is said:

"It has been held that the appointment of a receiver is not necessarily a judicial act in all cases, in the sense that it must be made only by the courts. And the right of the legislature of a State to enact a law, authorizing the governor of the State to appoint a receiver of an insolvent banking corporation, is not a violation of the constitutional provision limiting each department of the government to its own particular sphere; the appointment of a receiver under such law being in no manner a decree

or judgment affecting title to property, and not being a final determination of any rights, either legal or equitable.''

In *Commonwealth, ex rel. Banking Commissioner,* v. *Hargis Bank & Trust Co.,* 233 Ky. 801 (26 S. W. [2d] 1045), the court quoted from its opinion in *Cartmell* v. *Commercial Bank & Trust Co.,* 153 Ky. 798 (156 S. W. 1048), as follows:

''From the detailed manner in which the legislature has dealt with the subject, it was undoubtedly intended that the procedure, looking toward the closing of insolvent banks and their liquidation, was to be under the supervision of the banking commissioner and to obviate the necessity of going into a court of chancery to procure the appointment of a receiver in order to wind up the affairs of insolvent banks. Indeed, there is no necessity for a receiver, when the banking commissioner proceeds as directed by the provisions of this act, for, when he takes charge of a bank, all of his acts are such as might properly be discharged by a trustee or other person or officer occupying a fiduciary position. The object and aim of the law, in the appointment of a receiver, is to see that the assets of the institution, in charge of which he is placed, are properly, honestly, and economically administered. The ends of the law are satisfied, if the estate is administered in this way, whether the person charged with its administration be termed a banking commissioner, a trustee, or an assignee. The duties are the same. If any difference is to be found, it is in favor of the liquidation of banks, through and under the direction of the banking commissioner, rather than under a receiver appointed by the court.''

And then said:

''It is argued however, that such an interpretation if given to the act will render it unconstitutional, since the banking commissioner would then

be vested with judicial powers to determine whether or not a bank is insolvent and the bank would be deprived of its property without due process of law, in that no opportunity would be afforded it to contest in court the question of its insolvency. The act is not unconstitutional on the grounds asserted."

In passing upon the constitutionality of a statute authorizing the banking commissioner to take charge of insolvent banks, the supreme court of Arkansas, in *Greer* v. *Merchants & Mechanics Bank,* 114 Ark. 212, 217 (169 S. W. 802), said:

"We think that the original jurisdiction of the chancery courts as preserved by our Constitution does not prevent the legislature from entering upon the supervision of any matters which fall within the police power. This act does not attempt a redistribution of judicial power, but it provides for a system of supervision which has nothing to do with the judicial function."

In *Jeffries* v. *Bacastow,* 90 Kan. 495 (135 Pac. 582), the statute conferring authority upon the bank commissioner is somewhat similar to that here involved. After quoting it the court said (pp. 497, 498):

"The defendants take the position that this law is unconstitutional. The argument is that the appointment of a receiver is a judicial act to be performed by a court of equity, and that it cannot be performed by an executive officer, like the bank commissioner, under a government framed like ours upon the theory of a separation of powers. This argument is built entirely upon a name. The person spoken of as 'receiver' might just as well have been called a special deputy bank commissioner. Before insolvency the management of a bank is placed by law in the hands of a body of men, created by statute, designated a board of directors, who act

under the supervision and in many respects under the control of the bank commissioner. After insolvency, and in certain other contingencies, this management is exercised by a single official chosen by the bank commissioner, who is called, for convenience and by analogy, a receiver.

"The State, in the exercise of its police power, controls the business of banking in the interest of the public welfare, and interferes, now to a less and now to a greater extent, as conditions may warrant. By investigation or by other means the bank commissioner discovers certain things which constitute insolvency or other ground for winding up the affairs of the bank. His finding of fact is no more adjudication than the conclusion he reaches that available funds are below the lawful reserve, which must be made good, that an excessive loan must be reduced, or that capital stock has been impaired. The fact of insolvency having been discovered, the statute directs the bank commissioner's course, and the designation by him of a person to wind up the affairs of the bank is no more a judicial act than his order to the board of directors to remove a dishonest cashier. His powers are purely administrative and in no way infringe upon the ancient authority of courts to determine rights of person and property in specific controversies pending before them."

See, also, *State, ex rel. Meyer-Kiser Bank,* v. *Superior Court of Marion County,* 202 Ind. 589 (177 N. E. 322); *Northwestern Fuel Co.* v. *Live Stock State Bank of St. Paul,* 182 Minn. 276 (234 N. W. 304); *Smith* v. *Washington Casualty Ins. Co.,* 110 N. J. Eq. 122 (159 Atl. 510); *American State Bank of Minneapolis* v. *Jones,* 184 Minn. 498 (239 N. W. 144, 78 A. L. R. 770); *Commissioner of Banks* v. *Prudential Trust Co.,* 242 Mass. 78 (136 N. E. 410); *Coffin Bros. & Co.* v. *Bennett,* 164 Ga. 350 (138 S. E. 670).

Some other questions are discussed by counsel in their briefs. The relief prayed for in the bill of complaint is the appointment by the court of a receiver for the bank and a declaration by the court that Act No. 32, as amended, is "unconstitutional, null and void," for the reason that it imposes judicial duties upon the banking commissioner. The claims in this respect have been disposed of by what we have already said.

The order dismissing the bill is affirmed. As a public question is involved, no costs will be allowed.

POTTER, NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.