ATTORNEY GENERAL *v.* UNION GUARDIAN TRUST CO.

1. BANKS AND BANKING—TRUST COMPANY DOING BANKING BUSINESS—STATUTES.

   Statute enacted "to protect depositors and other creditors of banks and trust companies" and, among other things, to provide for the reorganization of such institutions *held,* applicable to all trust companies whether or not they have been formally permitted to engage in a general banking business under 3 Comp. Laws 1929, § 12019 (Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

2. SAME—STATUTES—CONSTITUTIONAL LAW.

   Emergency legislation, providing for reorganization of banks and trust companies under certain conditions by the State banking commissioner, in so far as it provides for determina-

tion and protection of the rights of interested persons in courts of equity *held,* not unconstitutional (Act No. 32, §§ 7, 7a, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

3. APPEAL AND ERROR—TRUST COMPANY REORGANIZATION.

Finding of trial court that plan of reorganization of trust company afforded equal protection to all its creditors, including objecting appellant who made no request for special personal relief, is affirmed on his review of decree confirming such reorganization which has been in operation for over a year.

WIEST, J., dissenting.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted June 4, 1935. (Docket No. 6, Calendar No. 38,250.) Decided December 10, 1935. Rehearing denied January 31, 1936.

Petition by Patrick H. O'Brien, as Attorney General of the State of Michigan, and as Attorney General, on the relation of Rudolph E. Reichert, State banking commissioner, and Murray D. VanWagoner, State highway commissioner, against Union Guardian Trust Company for the approval of a plan of reorganization of the Union Guardian Trust Company. Robert Oakman, Robert Oakman Land & Mortgage Company, a Michigan corporation, and Joseph Hirschfeld filed objections thereto. From decree approving plan Robert Oakman and Robert Oakman Land & Mortgage Company appeal. Joseph Hirschfeld cross-appeals. Affirmed.

*Harry S. Toy,* Attorney General, *Edmund E. Shepherd,* Assistant Attorney General, and *Shaeffer & Dahling,* for petitioners and defendant Union Guardian Trust Company.

*Edward B. Benscoe* (*Albert McCatchey,* of counsel), for appellant Hirschfeld.

EDWARD M. SHARPE, J.   This is an appeal from the decree of the circuit court of Wayne county, in chancery, confirming the reorganization of the Union Guardian Trust Company.  At the beginning of this action this trust company had been and was in the hands of a conservator, appointed by the banking commissioner with the approval of the governor in accordance with the provisions of Act No. 32, Pub. Acts 1933, as amended.   On February 1, 1934, the attorney general of the State of Michigan, acting in his official capacity as such and in behalf of the banking commissioner of Michigan, filed a petition for reorganization of the trust company in accordance with the provisions of Act No. 32, Pub. Acts 1933, as amended, particularly Act No. 95, § 7a, Pub. Acts 1933, together with Act No. 8, Pub. Acts 1932 (1st Ex. Sess.).

Section 7 of Act No. 95, Pub. Acts 1933, provides that the banking commissioner with the approval of the governor may reorganize any bank or trust company, while section 7a of this act provides for the formation of a depositors' committee by the State banking commissioner and that when a depositors' agreement is signed and approved by depositors representing at least 65 per cent. of the deposit liability, the trust company shall be reorganized in accordance with the provisions of Act No. 66, §§ 65a, 65b, 65c, Pub. Acts 1929, as added by Act No. 8, Pub. Acts 1932 (1st Ex. Sess.).

Section 7 of the act above referred to provides that the details of the plan of reorganization are to be posted and advertised.  In the instant case all of the above steps were taken and the petition filed in the circuit court of Wayne county.  The testimony taken at the hearing showed that the book value of the assets of the trust company were approximately $44,000,000 with liabilities of approximately $34,000,000 and that

the book equity of $10,000,000 had no value; that the total separate trust accounts exceed 6,000 with earnings in 1932 of over $1,000,000; and that in the event of receivership this fiduciary business would be of no value.

The plan in a general way provides that certain of the assets, namely, $800,000, are retained by the company to constitute its capital, while the balance of the assets are transferred to a trust to be liquidated under court supervision for the benefit of creditors and depositors. All dividends and stock assessments under the statutory double liability are to be delivered to the trust for the benefit of creditors and depositors.

The stock of the reorganized company is to be held by five general trustees selected by the depositors' committee and approved by the banking commissioner. Prior to February 11, 1933, it was the policy of the trust company to segregate trust funds and place them in separate bank accounts and earmark them as "trust funds, Class A" of the trust company. The aggregate of these funds amounted to about $4,593,000 and had been deposited in various banks. The plan also provides for the filing of claims with the liquidating trustees who pass upon them and report their findings to the court; dissatisfied claimants having the right to petition the court for a different disposition of their claims. After all claims have been finally determined, certificates of indebtedness are issued to general creditors, other certificates to preferred creditors, and certificates of participation to claimants for specific funds. All claims carry interest at the rate of five per cent. and after all creditors and claimants are paid in full, the balance of the assets of the trust are distributed among the stockholders.

In this cause, appellant Hirschfeld filed a paper objecting to the plan of reorganization and petitioning for recovery of the amount due him and for a receiver, while appellant Robert Oakman and Robert Oakman Land & Mortgage Company raised objections to the plan proposed. During the hearing, the trial court refused appellants the right to introduce testimony showing the solvency or insolvency of the trust company. On April 16, 1934, an order was entered approving the plan of reorganization and on May 3, 1934, Oakman and Oakman Land & Mortgage Company filed a claim of appeal and on May 11, 1934, appellant Hirschfeld filed a notice of appearance and notice of cross-appeal. In June, 1934, Oakman and Robert Oakman Land & Mortgage Company filed a motion for rehearing which was denied October 20, 1934, while on November 9, 1934, appellant Hirschfeld filed a paper entitled "supplemental claim of appeal."

It is contended by appellant Hirschfeld that Act No. 32, Pub. Acts 1933, is unconstitutional in that it embraces more than one object contrary to Const. 1908, art. 5, § 21, and for the further reason that it attempts to confer judicial power upon the banking commissioner of the State of Michigan.

Article 5, § 21, of the Constitution of Michigan provides that: "no law shall embrace more than one object, which shall be expressed in its title."

In *Kent County, ex rel. Board of Supervisors of Kent County,* v. *Reed* (syllabi), 243 Mich. 120, we said:

"While the object of an act must be expressed in the title, it is to the body of the act that the court must look to determine whether it embraces more than one object.

"The object of a law is the aim or purpose of the enactment, and it may authorize the doing of all

things which may fairly be regarded as in further-
ance of the general object of the enactment.''

See, also, *People, ex rel. Drake,* v. *Mahaney,* 13
Mich. 481; *Commerce-Guardian Trust & Savings
Bank* v. *State of Michigan,* 228 Mich. 316; *People* v.
*Monroe,* 349 Ill. 270 (182 N. E. 439, 85 A. L. R. 605).

Nor does the fact that the regulations affect more
than one type of corporation or industry make the
statute unconstitutional as containing more than one
subject. *Toledo, A. A. & G. T. R. Co.* v. *Dunlap,* 47
Mich. 456.

In *Jenking* v. *Osmun, Secretary of State,* 79 Mich.
305, we said,

''We think the act of 1885, so far as it authorizes
the formation of corporations for manufacturing or
mercantile purposes, or any union of the two, is valid
legislation. It is not open to the objection that the
title embraces more than one object. Any corpora-
tion created under this law can be created for all of
its purposes. It is common knowledge that in this
State, since 1855, all of our mining and manufactur-
ing corporations were organized under an act the
title of which authorized incorporating for mining
and manufacturing purposes.''

In *Hansen* v. *Harris,* 145 Ore. 487, 499 (28 Pac.
[2d] 649), the court said:

''The title to 1917 Session Laws (Washington),
chapter 80, which is the one which the defendant
criticizes, is:

'' 'An act relating to banking and trust business; the organization,
regulation, management and dissolution of banks and trust companies,
providing penalties and repealing certain acts and declaring an emer-
gency.'

''The appointment of receivers is not the objec-
tive which the act seeks to achieve, but is merely one
of the means or instrumentalities by which the real

objective is attained; that is, the preservation of the solvency of banks and the protection of those who are interested in them. Hence, since the title mentions the dissolution of banks, it was not necessary to mention receiverships in the title. 59 C. J. p. 814, § 394; 25 R. C. L. p. 858, § 104; *Idleman* v. *State of Oregon,* 146 Ore. 13 (27 Pac. [2d] 305). We find no merit in this contention."

See, also, *In the Matter of the Estate of Wellings,* 192 Cal. 506 (221 Pac. 628).

In the instant case the object of Act No. 32, Pub. Acts 1933, is the regulation of banks and trust companies; and while the object is the regulation of two types of corporations, both have in the past been subject to the same type of regulation by the same State banking commissioner.

Act No. 108, Pub. Acts 1889 (see 2 Comp. Laws 1915, §§ 8044–8077), requires trust companies to report their condition to the commissioner of the State banking department and are subject to its supervision and inspection. Moreover, under certain conditions the banking commissioner may file a bill in chancery for the appointment of a receiver to wind up the affairs of such a company. These same provisions are retained in Act No. 67, Pub. Acts 1929. The powers granted to trust companies in Act No. 108, Pub. Acts 1889, are similar to the powers granted in Act No. 67, Pub. Acts 1929, except that the latter act authorizes the trust companies to apply to the banking commissioner for authority to engage in a general commercial and savings bank business. It is a well-known fact that trust companies often perform services that primarily are the function of a bank and that banks render services of a trust nature. We think that the aim and object of the enactment of this legislation was the protection of credi-

tors and depositors of banks and trust companies. The object is single and does not violate Constitution 1908, art. 5, § 21.

Nor do we think the act unconstitutional because of the claimed judicial powers conferred upon the banking commissioner. We held in *Robinson* v. *People's Bank of Leslie* (syllabus), 266 Mich. 178 (92 A. L. R. 1251):

"Act No. 32, Pub. Acts 1933, as amended, does not vest in banking commissioner authority of a judicial nature as receiverships for liquidation and reorganization proceedings are subject to review by the courts and does not, therefore, violate Constitution 1908, art. 4, § 2, providing that no person belonging to one department of government shall exercise powers properly belonging to another."

See, also, *In the Matter of the Liquidation of Cashmere State Bank,* 169 Wash. 258 (13 Pac. [2d] 892); *Commonwealth, ex rel. Banking Commissioner,* v. *Hargis Bank & Trust Co.,* 233 Ky. 801 (26 S. W. [2d] 1045); *Greer* v. *Merchants & Mechanics Bank,* 114 Ark. 212 (169 S. W. 802); *State, ex rel. Meyer-Kiser Bank,* v. *Superior Court of Marion County,* 202 Ind. 589 (177 N. E. 322); *Commissioner of Banks* v. *Prudential Trust Co.,* 242 Mass. 78 (136 N. E. 410).

Having determined that the act is not unconstitutional for the reasons above given, it appears to us that the next question is, Does the trust company come within the provision of this act as amended, said trust company not having applied for and been granted the right to do a general commercial and savings bank business?

The title to the act is—"An act to protect depositors and other creditors of banks and trust companies," etc. The purpose of the legislature in enact-

ing this law was the regulation of banks and trust companies in general. It does not limit or confine trust companies to those which have been granted banking powers under the statute. Moreover, section 1 of the act defines the words "bank or trust company" as follows:

"The words 'bank or trust company' when used in this act shall be construed to mean any commercial, savings or industrial bank and any trust company doing business in this State."

Since Act No. 108, Pub. Acts 1889, was adopted banks and trust companies have remained under the control and supervision of the banking commissioner of Michigan. We think the legislature had in mind that these two types of financial institutions, having definite and like characteristics, should be regulated and controlled by a general law regardless of the fact that certain trust companies may not have received permission to conduct and engage in a commercial and savings banking business.

In this cause, the trial court held that the question of solvency was not involved; and it is contended by appellant Hirschfeld that, until insolvency is shown, the court has no jurisdiction to approve of any plan of reorganization.

Act No. 67, § 32, Pub. Acts 1929 (3 Comp. Laws 1929, § 12028), provides that the banking commissioner may apply for the appointment of a receiver when he becomes satisfied that the trust company (1) has refused to pay its obligations in accordance with the terms on which the obligations were contracted; or (2) that any trust company has become insolvent; or (3) that such corporation has violated the provisions of this act; or (4) for any cause hereinbefore or hereinafter stated.

Act No. 32, § 4, Pub. Acts 1933, provides that the banking commissioner may appoint a conservator for any bank or trust company for any of the following reasons:

1. Upon the application of the directors or any trust company, or;

2. When any trust company or any officer or officers thereof have failed, neglected or refused to comply with any of the rules, regulations, orders, general or special, made and promulgated by said commissioner as in Act No. 32, Pub. Acts 1933, provided, or;

3. Upon being satisfied in case of a trust company that any of the conditions prescribed by Act No. 67, § 32, Pub. Acts 1929, as amended, permitting the appointment of a receiver, exists, or;

4. When it shall appear to him that the interests of the depositors and other parties in interest render such action expedient.

In *Robinson* v. *People's Bank of Leslie, supra,* we said:

"A comparison of the powers conferred and the duties imposed on the commissioner of banking under the code (Act No. 66, Pub. Acts 1929), as amended, and under Act No. 32 (Pub. Acts 1933), as amended, does not disclose that the additional authority vested in the commissioner in the latter is of a judicial nature. Under it, if the condition of the bank is such as warrants action on his part, he may take charge of it as a conservator and operate it in the interest of all parties concerned in the hope that through his efforts, or the efforts of its officers, directors or stockholders, a reorganization may be had."

In the case of *Bushnell* v. *Leland,* 164 U. S. 684 (17 Sup. Ct. 209), the court said:

"All these alleged errors may be reduced to the single contention that under the national banking

law the comptroller of the currency is without power to appoint a receiver to a defaulting or insolvent national bank, or to call for a ratable assessment upon the stockholders of such bank, without a previous judicial ascertainment of the necessity for the appointment of the receiver and of the existence of the liabilities of the bank, and that the lodgment of authority in the comptroller, empowering him either to appoint a receiver or to make a ratable call upon the stockholders, is tantamount to vesting that officer with judicial power in violation of the Constitution. All of these contentions have been long since settled, and are not open to further discussion.''

We have not the information before us as to the reason for the appointment of a conservator for the trust company, but we must assume that the banking commissioner acted in good faith and made the appointment for one or more of the causes enumerated in the statute. We therefore hold that the advisability for such an appointment is a matter to be determined by the banking commissioner and will not under such circumstances be reviewed by this court; and, not being reviewable, the question of solvency or insolvency was not in issue in the proceedings to review the plan of reorganization.

Act No. 32, Pub. Acts 1933, also provides that after the banking commissioner had taken over the management of the trust company he may, with the approval of the governor (1) proceed to wind up its affairs, (2) continue the operation of the trust company, or (3) reorganize the company.

Section 7 of this act provides that if in the opinion of the banking commissioner it is advisable to reorganize the trust company, he shall do so upon such terms and conditions as he may prescribe, while section 7a provides that the proposed reorganization must have the approval of depositors representing at least 65 per cent. of the deposit liability. Sec-

tion 7 also provides that creditors, stockholders and depositors shall have the right to review the plan of reorganization, while the court is authorized to determine whether the plan properly protects all interested partners. In this cause the trial court, after making certain modifications, made a determination and approved the plan of reorganization.

Section 7 of this act also provides that creditors, stockholders or depositors shall have the right to have a determination made of the value of their claim, and the court in its discretion may order the payment of said claim in cash or by allocation of assets to said claimant of the value of their claims.

In this cause we find that appellant Hirschfeld did not request the court to determine the value of his claim or provide for its payment by the allocation of certain specific assets, but under the plan of reorganization all of the assets of the trust company were allocated to pay all of the claims. The reason for this may be found in the language used in *Doty* v. *Love,* 295 U. S. 64 (55 Sup. Ct. 558, 96 A. L. R. 1438):

"The argument is made that some of the assets of the old bank are placed at the risk of the business of the new one. All this was done for the protection of existing creditors. The finding is that collections are made more promptly and readily by a going concern than by one in liquidation. * * * Adequate precautions are embodied in the plan to assure the enjoyment of these benefits by the creditors and not by others. It is one of the terms of the decree that none of the profits of the business may be used for the new shareholders until every dollar's worth of assets turned over by the superintendent has been paid to the creditors or delivered to the pool. The court may intervene upon a showing of unreasonable delay."

Appellant Hirschfeld cited the case of *Shekell* v. *Ypsilanti Savings Bank,* 267 Mich. 114, as holding that an objecting creditor or depositor was entitled

to recover the amount due him. However, this case is not controlling of the issues involved here for the reason that Act No. 32, Pub. Acts 1933, had not been enacted when the Ypsilanti Savings Bank was reorganized. We held in that case that "In the absence of statute or insolvency proceedings compositions with creditors are binding only on those who assent."

In *Dunn* v. *Love,* 172 Miss. 342, 359 (155 South. 331, 92 A. L. R. 1323), the court said:

"It is fundamental in all our laws of chancery procedure that before any person may complain or sue in any equity court, he must set up a cause of action of which an essential element is that he must show that he has been injured, that what has been done results in actual harm to him. *Federal Land Bank of New Orleans* v. *Mississippi Power & Light Co.,* 157 Miss. 737 (128 South. 98); and the like rule applies to all those who object to what has been done in any given situation, whether in the chancery court or on appeal. This elemental rule fully applies also upon constitutional contentions, as was expressly recognized by this court in *New Orleans, M. & C. R. Co.* v. *State,* 110 Miss. 290, 305 (70 South. 355, 360), the court there having under consideration a constitutional question, and wherein having stated the general rule, as above mentioned, the court summarized it in the terse expression that 'one must be hurt before he complains.' The petition in the case now before us showed, the evidence established, and the court adjudged, that the plan and its execution would result in a substantially greater benefit to the 5,000 depositors, of whom only 2 are the appellants here, than had the plan not been adopted. And the case being, therefore, that the appellants are not hurt or injured in any substantial way, it follows that they are not in a position to complain."

The trial court in this cause found that by approving the plan of reorganization, the method of

liquidation would be for the benefit of all depositors, including appellant Hirschfeld. We agree with this finding.

Decree affirmed, no costs shall be assessed as this is a question of public interest.

POTTER, C. J., concurred with EDWARD M. SHARPE, J.

FEAD, J. (*concurring*). I agree with Mr. Justice EDWARD M. SHARPE that Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933, in express terms applies to all trust companies, whether or not they have been formally permitted to engage in a general banking business under 3 Comp. Laws 1929, § 12019.

I also agree that, as emergency legislation, the act is not in violation of the Constitution, in view of the fact that it provides for determination and protection of the rights of interested persons in courts of equity. *Robinson* v. *People's Bank of Leslie,* 266 Mich. 178 (92 A. L. R. 1251); *Lansing Drop Forge Co.* v. *American State Savings Bank, ante,* 124.

In so holding, I am confining my concurrence to the question before us—the power to reorganize a trust company under sections 7 and 7a of the acts, both of which provide for review by the courts. In provisions which expressly maintain the supremacy of the judicial branch of the government in a given situation, there is no indication of usurpation of judicial powers by the other branches.

Nor, in view of the severing clause of the act, does such concurrence carry blanket approval of all the provisions of the law. For example, we may doubt the power of the legislature to infringe upon the jurisdiction of courts of equity over trusts and the appointment of trustees without necessarily doubting its authority over corporations which can act as trustee and take trusts only by legislative consent.

Cross-appellant Hirschfeld's claim that insolvency of the company must be established as a requisite to reorganization is, technically, not tenable because neither section of the act so provides.

But in a practical sense the ruling that solvency was not in issue was wrong. Whether the court had power to determine the advisability of reorganization or merely to pass upon the plan after advisability had finally been determined by the banking commissioner and governor, the financial condition of the corporation was relevant and most important. The court could not determine the advisability or pass upon the fairness of the plan and protect the legal rights of objectors without evidence of the condition of the company. Moreover, all interested parties were entitled to the facts concerning the corporation in order that they might determine their own course of action, whether to agree to the plan, suggest modification, or seek specific personal relief.

The statute does not detail the practice. Necessarily it must be somewhat informal and the hearing be more in the nature of an inquiry than of a lawsuit, with parties arraigned against each other. The proponents of the plan, having access to the records and information, have the duty to present sufficient facts to enable the court intelligently to pass judgment. The objector has the duty to make demand for the particular information he desires, point out his specific objections and, in due time, make known to the court the personal relief, if any, he desires.

The fairness of the plan upon its face and the general circumstances must determine the extent of the initial duty of proponent to make a *prima facie* case and of objectors to be specific in their demand for information and their objections. While the testimony taken in this matter was incomplete and ordinarily might be insufficient, the plan at bar as modi-

fied by the court has so much the general appearance of fairness, with equal protection to all creditors and possibility of largest return to them, as to raise the duty of an objector to be specific in his criticism of it and in his prayer for relief.

If Mr. Hirschfeld, in circuit court and here, were seeking personal relief, he would have been, and now would be, entitled to such disclosure of the conditions of the trust company as would enable the court to pass upon his prayer. The relief he asks is that the whole plan of reorganization be nullified or, in the alternative, that the case be remanded to take proofs of all the facts for the purpose of determining the wisdom and fairness of the plan and whether the company is solvent or insolvent. Nowhere does he indicate that he wishes other than nullification of the plan or appointment of a receiver.

In our opinion, he is not entitled to such relief. Reorganization has been accepted by all interested parties, either by actual approval of it, by failing to object in circuit court, or by failing to appeal from the decree. The plan has been in operation over a year. It would be inequitable to permit a single objector to create such confusion and loss to other creditors as would be caused by the granting of his prayer. Such inequity could be justified only if it were the incidental and inevitable result of the necessary protection of his rights. In view of the fact that the plan offered affords him equal protection with all other creditors, and because he has made no request for special personal relief, the decree is affirmed, without costs.

NORTH and BUTZEL, JJ., concurred with FEAD, J.

WIEST, J. (*dissenting*). I cannot concur in either opinion.

The attorney general states the pivotal question as follows:

"Does the Union Guardian Trust Company, not having applied for and having received the right to do a general commercial and savings bank business under the statutes, come within the provisions of Act No. 32, Pub. Acts 1933, as amended?"

The answer is no.

The decision in *Robinson* v. *People's Bank of Leslie,* 266 Mich. 178 (92 A. L. R. 1251), holding Act No. 32 not violative of constitutional judicial power in its provisions relative to banks and powers of the commissioner of banking thereover, may, possibly, be extended to a trust company, authorized by the commissioner of banking, under the statute (3 Comp. Laws 1929, § 12019), to do a banking business for in such case the subject matter is germane to banking and a trust company, in applying for and employing the grant of authority, subjects itself to all regulatory banking laws. But the act cannot be held to so bring a trust company, not authorized and expressly prohibited by the statute (3 Comp. Laws 1929, § 12018) from doing a banking business and, therefore, in the eye of the law, strictly a service fiduciary, under private appointment or court designation.

Trusts, created by private instruments, designating a chartered trust company fiduciary, or such designation by a court of competent jurisdiction, establish a relation and vest powers not in any wise related to banking and exclusively within judicial cognizance with reference to needed control, management and appointment of a successor trustee or trustees.

Act No. 32, Pub. Acts 1933, impinges this judicial power if held to apply to a trust company prohibited, by statute, from doing a banking business.

If the trust company has violated the statutory prohibition the remedy is not under Act No. 32. The act does not bring a trust company, prohibited by the statute from doing a banking business, within its provisions and all the proceedings to the contrary are null and void and should be dismissed.

BUSHNELL, J., did not sit.

The late Justice NELSON SHARPE took no part in this decision.